Theresa Kahn Bold and Dorothy Kahn, by Sam H. Levin, her Guardian, Appellees, v. Mid-City Trust and Savings Bank, Appellant.

Gen. No. 37,530.

Opinion filed March 29, 1935.

GUSTAV E. BEERLY, of Chicago, for appellant.

PRITZKER & PRITZKER, of Chicago, for appellees; RICHARD WEINBERGER, of Chicago, of counsel.

Mr. Presiding Justice Friend delivered the opinion of the court.

Defendant seeks the reversal of a decree entered by the circuit court sustaining the master's report and granting the relief prayed in complainants' amended bill.

The essential facts disclose that December 2, 1927, Joe Kahn, father of the two complainants, then aged 12 and 16 years respectively, entered into a written agreement with Mid-City Trust and Savings Bank creating a trust for the benefit of his children, and designating the bank as trustee. Thereafter he transferred to said trustee securities valued at $2,000. The agreement empowered the trustee to invest the trust estate and keep it securely invested according to its best judgment and discretion. Upon Kahn's death, defendant as trustee received an insurance fund of $6,000 as part of the trust estate. With the proceeds of the original securities, which had been sold and converted into cash, and the $6,000 insurance fund, the trustee purchased certain mortgage bonds and notes owned individually by the defendant bank. These bonds and notes were parts of loans on various improved properties secured by first mortgage trust deeds.

In all except two instances defendant acted as trustee under these loans and charged the owners of the properties fees for certifying the bonds, which fees were deducted from the face value of the loan. It also received commissions, varying from two per cent to five per cent of the amount of the loans, which were likewise deducted from the face value thereof. It placed insurance on the properties, charging the owners the full premiums, and received rebates of approximately 25 per cent from the insurance companies. Upon the guarantee policies ordered on these loans, defendant charged the owners of the

properties the gross cost of the policies, and retained a discount of 10 per cent. All the sums thus received for certification fees, commissions, rebates and discounts were placed in the bank's general funds, and became part of its assets. After each loan was consummated, the bank held the bonds or notes evidencing the loans, and these, likewise, became part of its general assets.

According to the stipulation of the parties, the bonds held by the trustee for the Kahn estate were sold by the bank to "Mid-City Trust & Savings Bank, as Trustee for the Estate of Joe Kahn," at their respective par values, together with accrued interest. In several instances the bank sold some of the bonds, later acquired by the estate, to its customers, and subsequently repurchased them at discounts of one per cent to two per cent. The commissions thus made were also placed in the bank's general funds.

After the Kahn estate had acquired these bonds, default occurred on each of the loans. When Theresa Kahn Bold, one of the beneficiaries, became entitled to her share of the estate and made a demand therefor, the trustee offered her a portion of the bonds in question. Neither she nor her sister, Dorothy Kahn, having ever consented to, nor acquiesced in the acts of the defendant, and having had no notice thereof, they thereupon repudiated the trustee's transactions, and demanded an accounting. The accounting was denied and suit followed.

The court's decree removed the defendant as trustee, appointed one Sam H. Levin as its successor, directed defendant as trustee and in its individual capacity to pay to Theresa Kahn Bold, and to Sam H. Levin, as successor-trustee for the use and benefit of Dorothy Kahn, each $5,156.72, with interest and costs of suit, and entered judgment in favor of each of the beneficiary complainants, and against defendant as trustee

and in its individual capacity, for $5,156.72, interest and costs.

The principal question involved is whether a trustee can buy from itself bonds and notes which it owned in its individual capacity, even though it acted in good faith, received full value for the securities purchased, and was, as in this instance, specifically authorized by statute to invest in first mortgage bonds. Illinois courts have not often had this question under consideration under similar circumstances, but in other jurisdictions they have dealt with the subject and laid down rather definite equitable principles as a basis for their conclusions.

*Michoud v. Girod,* 4 How. (U. S.) 503, at page 555 (1846), frequently cited, enunciates the general rule as follows:

''It therefore prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another, and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests when he is the seller or buyer on his own account are directly conflicting with those of the person on whose account he buys or sells.''

In *Magruder v. Drury,* 235 U. S. 106 (1914), the brokerage firm of Arms & Drury made real estate loans for which it charged commissions ranging from one per cent to two per cent. Drury, a member of the firm, was trustee of the estate involved, and as such bought notes which were a part of such loans from his own firm at par. It was Drury's contention that no profit was made by the firm of Arms & Drury on the sales of notes to the trustee; that the transactions of Arms & Drury with the trustee were in the regular course of their business, in which they had their own moneys invested; that they cost the estate no more

than if the transaction's had been with some other firm or individual; and it was argued that if the firm of Arms & Drury, out of their own moneys, made loans on promissory notes, upon which the borrower paid customary brokerages, those were profits on their own funds in which the estate could have no interest, and in which it could acquire no interest by reason of the subsequent purchase of those notes by the trustee for their real value, any more than could any of the purchasers of such notes from Arms & Drury claim such an interest; that the relation of the firm of Arms & Drury to the trustee benefited the estate, by enabling the trustee at all times to make immediate reinvestment of its funds, without loss of income, and by enabling the trustee at all times to readily procure reinvestments without the payment of brokerage fees commonly charged the lender for placing his money, as well as the borrower for procuring his loan, in times of stringency. However, the court held it to be a well settled rule that a trustee can make no profit out of his trust, and said (page 119):

"The rule in such cases springs from his duty to protect the interests of the estate, and not to permit his personal interest to in any wise conflict with his duty in that respect. The intention is to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity." And, after quoting the above excerpt from *Michoud v. Girod, supra,* continued (page 120):

"It makes no difference that the estate was not a loser in the transaction or that the commission was no more than the services were reasonably worth. It is the relation of the trustee to the estate which prevents his dealing in such way as to make a personal profit for himself. The findings show that the firm of which Mr. Drury was a member, in making the loans evi-

denced by these notes, was allowed a commission of one to two per cent. This profit was in fact realized when the notes were turned over to the estate at face value and accrued interest. The value of the notes when they were turned over depended on the responsibility and security back of them. When the notes were sold to the estate it took the risk of payment without loss. While no wrong was intended, and none was in fact done to the estate, we think nevertheless that upon the principles governing the duty of a trustee, the contention that this profit could not be taken by Mr. Drury owing to his relation to the estate, should have been sustained."

In *In re Matter of Long Island Loan & Trust Co.*, 92 App. Div. 1, 87 N. Y. S. 65 (1904), affirmed in 179 N. Y. 520, the trust company, in pursuance of its private business, had made several mortgage loans and held the bonds and mortgages in its possession. The executive committee of the trust company adopted a resolution that such bonds and mortgages, being the property of the company, should thereafter be held in the trust estate involved in that case. The beneficiary urged that the transaction amounted to a sale to the trust estate by the trustees, and was in violation of public policy which forbids a trustee dealing with a trust estate both as buyer and seller, and demanded that the bonds and mortgages be adjudged to belong to the trustee and that the trust fund be made good, with interest. In its opinion, the court said (page 66):

"The transaction on the part of this trustee, no matter what degree of good faith may have been back of the resolution of 1893, is counter to public policy. Trustees cannot be permitted to deal with trust funds in the dual capacity of buyer and seller. It has long been settled, and upon principles which cannot be con-

troverted, that a trustee cannot deal in his own behalf with the funds intrusted to his charge for the benefit of another. He can neither purchase the trust funds for himself, nor exchange them for his own property. (*Ackerman v. Emott,* 4 Barb. 626, 649; *Smith v. Howlett,* 29 App. Div. 182.)''

The facts in *St. Paul Trust Co. v. Strong,* 85 Minn. 1 (1901), were strikingly similar to the instant case. The beneficiaries there objected to the trustee's accounting with respect to six notes, secured by real estate mortgages, and repudiated the investments as being improper. The trustee in its individual capacity owned these six notes. Shortly after the notes and mortgages were acquired by the trust company, they were sold to the company as trustee of the Strong estate without the consent of the beneficiaries, some of whom were minors, for the full amount of the principal represented by the notes, with accrued interest. Upon the original acquisition of these notes and mortgages, the trust company charged the mortgagors a commission for making the loans. No part of this commission went into the trust estate; it was all retained by the company. The trustee in that case, as here, contended that the investments fully complied with the requirements of the statute, and that it exercised good faith in the transactions, but the court held that the purchases by the trustee from itself were not to be tested in that way, and the trustee was surcharged with the principal of the trust fund, together with simple interest. Also quoting from the *Michoud v. Girod* case, *supra,* the court said (page 5):

''The rule of law which forbids transactions whereby the personal interest of a trustee may be opposed to his duty has often been referred to and applied in this court. It was stated in *Baldwin v. Allison,* 4 Minn. 11 (25), that no rule is more fully settled than that

which forbids a trustee's dealing with himself in respect to trust property; that no fraud, in fact, need be shown by the beneficiaries, and no excuse can be offered by the trustee to justify such transactions. The fact established, the result inevitably follows. This proposition has been repeated and affirmed in many cases. In *King v. Remington,* 36 Minn. 15, 25, 29 N. W. 352, 358, it was put in this form:

" 'The rule which disables one occupying a confidential or fiduciary relation in respect to property the subject of sale, from purchasing for his own benefit, and regarding him as a trustee if he do so purchase, is absolute, and looks to no other facts than the relation and the purchaser.'

"In *Webb v. Paxton,* 36 Minn. 532, 32 N. W. 749, it was stated that the doctrine 'does not depend upon the existence of intentional fraud, but is an inflexible rule, founded upon the fact that the two employments are incompatible.' ''

In *Cornet v. Cornet,* 269 Mo. 298 (1916), the trustee, Cornet, and his partner, Zeibig, real estate brokers, purchased a group of mortgage bonds in the name of the firm at a discount of eight per cent of the face amount thereof, and paid for the said securities out of firm bonds. Subsequently Cornet, as trustee, bought these bonds from his firm at par for the trust estate. The beneficiary repudiated the trustee's act, and the court, in commenting on the transaction, said (pages 322, 323):

"In making this investment the defendant violated various rules by which equity seeks to secure trust funds from mismanagement and waste. One of these rules is that the trustee who invests such funds in his own name becomes personally responsible. This is only a corollary of the rule that if he deals with the estate on his own account it must be at his own risk.

Were he permitted to do otherwise it would place before him the constant temptation to make the trust fund a dumping ground for his own unsatisfactory ventures. . . . The rule is imperative that a trustee cannot buy his own property from himself for the purpose of the trust. It makes no difference that the sale is intrinsically a fair one and for a full consideration. 'The policy of equity is to remove every possible temptation from the trustee.' Pomeroy's Equity Jurisprudence (3d Ed.), sec. 958.''

The Supreme Court of this State, as early as 1844 in the case of *Thorp v. McCullum,* in 1 Gilm. 614, laid down the rule that trustees and others sustaining a fiduciary and confidential relation cannot deal on their own account with the thing or the persons falling within that trust or relationship, and recently in *Bennett v. Weber,* 323 Ill. 283, followed the same principle in a case where the trustee purchased in his own name real estate from himself as trustee under the trust involved. While the facts in these two Illinois decisions are somewhat different from those in the instant case, the reasoning employed by the court in arriving at its conclusions followed the same equitable principles.

The most recent enunciation of the same rule made in this State may be found in *Joliet Trust & Savings Bank v. Ingalls,* 276 Ill. App. 445, where the question arose upon a motion to dismiss the petition of George Woodruff, as trustee under the last will and testament of Lewis E. Ingalls, deceased, and Myra H. Peale, beneficiary under said will, the petition charging among other things that the Joliet Trust & Savings Bank, individually, had sold to itself as one of the former trustees under said will, notes secured by trust deeds upon real estate, and thereby made a large profit for itself upon the sale of said securities to the said trust estate. A motion to dismiss the petition, taking

the place of a demurrer, was allowed by the trial court. The court of review, however, reversed the order dismissing the petition, and stated that "from the facts alleged in the petition, it is clearly apparent that the Joliet Trust and Savings Bank, acting as trustee for said estate, and purchasing securities from itself, acted illegally. The same is a fraud upon the estate."

Solicitors for the trustee in the instant case cite no authority contrary to the equitable principles thus laid down, but seem to rely upon the good faith of the trustee and the specific statutory authorization to invest trust funds in first mortgage bonds. We believe, however, that these considerations are not controlling. The rule as enunciated by the foregoing cases is an inflexible one, based on sound public policy and designed to remove every possible temptation from a trustee to make the trust fund a dumping ground for his own unsatisfactory ventures. The courts have followed this principle even in cases where the best of faith, care and prudence was exercised, and under circumstances showing that the loans were perfectly secured and bore the highest rate of interest ordinarily obtainable.

From the cases cited, it likewise appears that the act of the trustee in purchasing its own bonds is voidable at the instance of any beneficiary within a reasonable time after notice, and that course of action having been pursued in the instant case, the decree properly surcharged the trustee with the principal of the trust fund and interest and directed it to pay complainants the respective sums shown to be due them upon the accounting.

So far as the removal of the trustee is concerned, it should be noted that defendant, having made improper investments without the knowledge or consent of the beneficiaries, upon demand for an accounting refused to render the same, although the older beneficiary had

become entitled to her share of the trust estate. She had not received anything from the estate, which was intended by her deceased father to contribute to her support, and under the circumstances we think it was not improper for the chancellor to order the trustee's removal.

The remaining contention of defendant is in substance that the judgment in this case should be payable out of the trust estate. In its portfolio of securities, the Kahn trust had nothing but defaulted real estate bonds and notes. To turn these back to the beneficiaries, after finding that the trustee had committed a constructive fraud upon complainants, would afford them scant relief. *In re Matter of Long Island Loan & Trust Co.*, 92 App. Div. 1, 87 N. Y. S. 65 (1904), affirmed in 179 N. Y. 520, and in the *Cornet v. Cornet* case, 269 Mo. 298 (1916), previously cited, the courts held the trustee liable for the full amount of the trust fund as an individual, and we approve that part of the decree which granted complainants herein the same remedy.

For the reasons stated, the decree of the circuit court will be affirmed.

*Affirmed.*

SCANLAN and SULLIVAN, JJ., concur.