(No. 26956.—

LAURA G. GREEN *et al.*, Appellants, *vs.* THOMAS JAMES GAWNE *et al.*, Appellees.—(JAMES D. GREEN, Cross Appellant.)

*Opinion filed January 21, 1943—Rehearing denied March 15, 1943.*

CHARLES J. TRAINOR, for appellants.

CAMPBELL, CLITHERO & FISCHER, (DELBERT A. CLI-THERO, and CARLTON L. FISCHER, of counsel,) for appellees.

BREWER & FARRELL, (WALTER BREWER, EDWARD J. FARRELL, and OTTO W. BERG, of counsel,) for cross appellant.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This was a proceeding in equity for partition and comes to this court from the superior court of Cook county on a direct appeal from a decree approving the master's report and dismissing the action at plaintiffs' cost. The subject matter of the suit is a number of parcels of real estate which the plaintiffs and their brother, Thomas J. Gawne, and his wife conveyed by deed in trust to James D. Green and Helga L. M. Gawne, as trustees, under a trust agreement dated May 3, 1933, together with other parcels subsequently added to the trust.

The complaint alleged that appellants and their brother, Thomas J. Gawne, were each the owner of an undivided

one-third interest in specifically described, real estate in Cook county; that for the purpose of the efficient handling and control of the property and in order to provide definitely for an equal division among them of the net profits, they entered into the trust agreement above mentioned.

Provisions were made in the trust agreement for the method and manner of handling the trust, and that the rents and profits should be distributed in equal parts to the three donors, Laura G. Green, Clara V. Gawne and Thomas J. Gawne; and it made provisions for future distribution of the income and *corpus* in case of death of the donors. In this respect the instrument provided as follows, being section 5-D: "Upon the death of the last surviving donor, this trust will automatically terminate upon the trustees making a complete and final settlement of said trust estate and distributing the same among the persons respectively entitled thereto as hereinabove designated." The instrument followed with the statement: "Upon the termination of said trust, the *corpus* thereof shall be divided as follows:" and the distributive amounts were set forth, none of which is material here except as to the share of Clara V. Gawne. It was provided: "One-third thereof donated by Clara V. Gawne shall be distributed to the surviving children of the donors Laura G. Green and Thomas J. Gawne, share and share alike, that is to say that if the said Laura G. Green shall leave one child her surviving and the said Thomas J. Gawne shall leave four children him surviving, each of said children shall take a one-fifth part thereof; should any of the said beneficiaries in this paragraph referred to die leaving issue, the share of such deceased beneficiary or beneficiaries shall pass to such issue them surviving."

The complaint further averred that the said trust agreement was not recorded; that the plan was to retain the properties in the heirs of Daniel Gawne, the father of the donors, and that each of the heirs would retain his or her respective interest therein; that the properties have re-

mained in the control of the donors since May 3, 1933, who had the same control as prior thereto, and that the grantors had charge of operating and renting the properties and monthly turned over the proceeds to James D. Green, trustee; that an oral agreement between the parties for the control and management of the properties had been carried out in detail for seven years and that the cotrustee, Helga L. M. Gawne, never participated in such management and control and, by reason thereof, Thomas J. Gawne was estopped from contending that the management and control of the properties should be otherwise; that she, Helga, had no experience in connection with real-estate management and control and took no active interest in such management and control from the date of the instrument to the filing of the suit; that a controversy arose and, as a result, Clara V. Gawne served a notice on the trustee that she was changing the disposition of her part at the termination of the trust and upon her death, under a provision of the instrument attached to the complaint marked exhibit "A," which modifying provision reads: "The donors shall have full power: (A) At any time, or from time to time, by an instrument in writing, delivered to the trustees during the lifetime of the respective donors, any donor herein may modify, alter, direct and control to whom his respective distributive share or shares hereinunder may be paid, provided, however, that in case of modification or amendment, the duties, powers and liabilities of the trustees shall not be changed without their written consent."

It was alleged in the complaint that the donors never intended to alienate their interest in the said properties; that they each owned an undivided one-third equitable interest in the properties; that by reason of the cotrustee, Helga L. M. Gawne, insisting on the trust making certain payments for the benefit of her son, her total lack of experience and her long acquiescence in the management of the property without her participation, she is disqualified

to act as cotrustee; that the agreement between the parties can no longer be carried out and that all the properties should be reconveyed by the trustee to the donors or their nominees.

It was requested in the complaint that the three donors be decreed to be equitable owners of the properties described in the trust agreement and all property added thereto, each an undivided one-third interest; that an account be taken, commissioners appointed to make division of the premises if it could be done without prejudice and, if not, then the usual partition sale be made; that the cotrustee, Helga L. M. Gawne, be removed and that she and her husband be enjoined from interfering with the management of the properties. Helga L. M. Gawne and James D. Green were made defendants individually and as trustees, and Thomas J. Gawne was the other defendant.

Defendant James D. Green, individually and as trustee, filed answer admitting many of the allegations of the complaint, but denying that the agreement was that he was to serve for $300 a year and alleging that he was to receive reasonable compensation; admitted that he acted as trustee without the participation of his cotrustee; that the selection of agents to manage the properties was with his approval; that until a few months previous all parties had acquiesced in the manner in which the properties were managed, and that the trust instrument relied on by plaintiffs was the document under which he had been acting as trustee.

In his separate answer Thomas J. Gawne admitted the creation of a trust of the properties with James D. Green and Helga Gawne, as trustees, and the delegation of the keeping of the books to James D. Green; averred, in substance, that James D. Green had agreed to accept and had accepted $300 a year in full of his compensation as trustee; that Helga Gawne had participated in the management of the trust, and that the purported trust agreement relied on by plaintiffs was not the genuine trust agreement exe-

cuted by the parties but that the true agreement of May 3, 1933, which all the parties signed, was the original, of which his exhibit 2, attached to his answer, was a true copy. Defendant Helga Gawne's answer was, in effect, the same.

Plaintiffs exhibit "A," above mentioned and defendant Gawne's exhibit 2, just referred to, bore the same date, were each signed by the same parties and each contained the same clause of acceptance signed by the trustees. All signatures were under seal. The only difference in the contents of the two instruments is that plaintiffs' exhibit "A" contains the clause permitting a modification of the beneficiary clause hereinbefore referred to, whereby the donors were given full power "to modify, alter or control" to whom his respective distributive share might be paid, whereas, defendants' exhibit 2 contained no such provision. All other provisions of the two instruments were identical in every respect.

The cause was referred to the master who, after several hearings, found that the genuine trust agreement was the one relied on by defendants, Thomas J. and Helga Gawne; that because the trust is active and not passive, plaintiffs had no such interest in the real estate as entitled them to partition; that the plaintiffs had failed to prove that Helga Gawne should be removed as trustee; and that James D. Green had agreed to and had accepted the sum of $300 a year for his compensation and was not entitled to any further compensation. The trial court approved the master's findings and report and entered a decree dismissing the complaint.

The testimony of the witnesses is in hopeless conflict on the question of which instrument constitutes the true trust indenture. James D. Green testified that the instrument relied on by plaintiffs is the only one that was ever given to him; that it is in the same condition as when he received it about May 3, 1933, and that it is the only agreement under which the trust had been executed for the past

seven years. He testified that Clara Gawne had lodged with him an instrument in writing changing the payment of her distributive share upon her death from the four children of Thomas J. and Helga Gawne and James D. Green, each a one-fifth part, to all of it to be paid to the children of Laura Green, of which class he, the said James D. Green, was the only one. He also testified that he was in the office of the attorney, who drew the instrument on May 3, 1933, saw all the parties sign the agreement, which was the one he had been acting under and was the one relied upon by plaintiffs. His mother, Laura Green, and his aunt, Clara Gawne each testified to the same effect. None of them, however, said anything about two trust instruments being executed there on that date.

Thomas J. Gawne testified that the only trust instrument executed and delivered on that date was the one he presented; that he had pledged it at a bank as collateral; and that he and his sisters, Clara and Laura, the plaintiffs, had managed different pieces of property as agents for the trustees. He was corroborated by his wife, Helga Gawne. The attorney for the family testified that he drew the instruments involved in the controversy, and he detailed the following circumstances: that the plaintiffs and their brother, Thomas J. Gawne, came to his office on April 28, 1933, for the execution of a trust, which he had prepared, but it had to be rewritten to correct the property descriptions and to eliminate certain pieces that were not to be included in the trust; that arrangements were made for them to return when the instrument had been redrafted; that on May 3, 1933, the parties above mentioned returned; that a short time later Helga came in, and they all executed the instrument he had prepared, which he identified as the one defendants, Thomas J. and Helga Gawne, relied on; that after they had all signed it he read it aloud to them, while each followed on their respective copies, except that Laura Green and her son, James D. Green, used the same

copy; that after it had been read Clara Gawne asked if she had the right to change the parties to whom her distributive share should be paid at her death and he told her no, whereupon she said she would never abide by it and Laura Green joined in such attitude; that it was then agreed that he should redraft the instrument and include the clause permitting such a modification, and that they were all to return in an hour and sign the corrected instrument, which they did, and that he personally delivered to James D. Green the copy he presented as the one, and only one, under which he had been acting as trustee.

It is significant that neither of the plaintiffs nor James D. Green testified that there were two instruments signed at two intervals on that day, but they each testified that, after the instrument had been executed and read, Clara Gawne objected that Helga Gawne should have any part in the management of the properties and that they then all agreed verbally that the trusteeship and property management was to continue just as it had been since the death of the father of Thomas Gawne and his sisters. Further significance must be attached to the fact that some creditors' bills had been filed against the three donors of the trust to subject the property to execution on some judgments against their father as a stockholder in a closed bank and that the same attorney who drew the trust agreement, represented the donors. In the answers to the creditors' bills, the existence of the trust was averred and copies of the trust agreement were attached to the answers as exhibits, and averments were included that they were true and exact copies of the trust instrument under which the properties were held. These exhibits were identical with the exhibit relied on here by defendants, Thomas J. and Helga Gawne. Both James D. Green and Helga Gawne signed and verified those answers which set up that they were holding the properties therein described under that particular trust instrument. There was other testimony

which cast doubt upon the genuineness of the instrument relied on by plaintiffs. The testimony of plaintiffs' attorney is subject to little weight and James D. Green's interest in the result of the suit must be duly considered. From a careful examination and analysis of the evidence we cannot say that the findings of the master and the trial court were manifestly against the weight of the evidence. We are of the opinion that the trust agreement relied on by Thomas J. and Helga Gawne is the true manifestation in writing of the express trust under which the trustees are vested with the legal title to the real estate involved.

We might rest the affirmance of the trial court's decree on that question of fact, on the ground that plaintiffs failed to prove their case as alleged. But, since the two trust instruments were identical except in the modification clause hereinbefore pointed out, all doubt as to the nature of appellants' rights and interests in the property, which has an approximate value of $450,000, according to the record, should be definitely settled.

It is contended that the trust instrument under which the properties are held contains no definite and certain termination date and therefore the plaintiffs are the owners of an undivided equitable interest and are entitled to partition, according to the holdings of this court in *Ashton* v. *Macqueen,* 361 Ill. 132, *Yedor* v. *Chicago City Bank and Trust Co.* 376 id. 121, and *Fox* v. *Fox,* 250 id. 384. The trust instrument fixes the specific time for the trust's termination. By its terms the trust is to automatically terminate upon the death of the last surviving donor, and upon its termination the *corpus* is to be divided as provided in the agreement. The fact that the time for distribution was added does not have the effect of rendering the trust's duration indefinite, and thereby place plaintiffs in a position where they have an immediate right to a conveyance in fee. (*Harris* v. *Ingleside Building Corp.* 370 Ill. 617.)

The title being held by the trustees in an active trust the property is not subject to partition, (*Burbach* v. *Burbach,* 217 Ill. 547,) and the court properly dismissed the complaint for want of equity.

Much of the argument in this case is devoted, by appellant's counsel, to an effort to show that the clause permitting a modification as to the persons to whom the distributive shares of the donors should be paid, manifests such a reservation of control, when coupled with the reservation of the net income from the trust during their lives, as will, as a matter of law, give them each an undivided equitable interest in the realty. Since we have held that the instrument containing that clause is not the true writing which manifests the trust here involved, no consideration of that contention is necessary. We are limited here, in determining the nature of the trust, to the terms of the true instrument creating it and to that alone. (*Crow* v. *Crow,* 348 Ill. 241.) The trust here is clearly within the definition of an active trust as defined in *Kathman* v. *Sheehan,* 332 Ill. 280, *Crow* v. *Crow, supra,* and many other cases. In view of the fact that we have held that it is an active trust, the inheritance-tax cases relied upon by appellants are not applicable.

Appellants' contention that the court erred in refusing to consider the parol evidence of waiver of certain terms of the agreement is not tenable. The trust agreement provides that the trustees are to collect the rents, income and profits of said properties, to pay all taxes and special assessments, etc. It is undisputed in the evidence that all parties, the trustees and the donors, agreed that the donors were to continue to manage the properties the same as they did prior to the creation of the trust. There were other verbal arrangements with the trustees, but this cannot be used to modify the terms of the trust instrument which is under seal. There are instances in which parol evidence is admissible in connection with an instrument under seal. Thus,

it may be offered to show that true consideration or that a new parol agreement has been executed or that one of the parties was led into conduct prejudicial to his interest which would give rise to equitable estoppel. (*Worrell* v. *Forsyth,* 141 Ill. 22; *Becker* v. *Becker,* 250 id. 117.) The rule of admissibility of such evidence has also been applied in the construction of instruments under seal (*Magnolia Petroleum Co.* v. *West,* 374 Ill. 516,) but only where there is an ambiguity in the terms used in the instrument itself. (*Green* v. *Ashland State Bank,* 346 Ill. 174.) There being no ambiguity in the language of the instrument here involved, which is complete in itself, and the preponderance of the evidence being that the donors were to manage the properties as agents of the trustees, the master's findings based on a refusal to consider such testimony, which was properly objected to, were correct.

A number of exhibits were offered in evidence which contained the genuine signatures of the donors. This evidence was properly considered because it tended to throw some light on the question as to which instrument, plaintiffs' exhibit "A" or Gawne's exhibit 2, constituted the true trust agreement. And the master properly found Gawne's exhibit 2 to be the genuine trust agreement. That this agreement did not confer any power on the donors to change the beneficiaries of the trust, is conceded.

It can hardly be denied that since exhibit 2 is the genuine trust agreement, all of the parol evidence offered in that respect, and the cases cited for the purpose of lending aid to the court in construing the language in exhibit "A," would be irrelevant. This being true, many questions as to evidence and the offer of exhibits are immaterial. The trial court found the same as the master and, in view of the little weight to be given the testimony of an attorney in the case, (*Wetzel* v. *Firebaugh,* 251 Ill. 190; *Wilkinson* v. *People,* 226 id. 135,) and the interest which the trustee, Green, has in sustaining plaintiffs' exhibit "A" as the gen-

uine trust agrement, we are not able to say that the master improperly found that defendant Gawne's exhibit 2 is the true agreement of the parties.

The attempt to remove Helga Gawne as cotrustee merits little attention. The substance of the charges against her are that she acted under the orders of her husband in demanding that her cotrustee pay an automobile bill out of trust funds and in demanding a right to participate in the management of the trust in violation of an oral agreement that she was not to participate, and that she is inexperienced and unfit, which would cause the income of the trust to be decreased. The law is plain that said trustee cannot deal with the trust funds for her own benefit or of any member of her family, as contended by appellants. (*Bennett* v. *Weber*, 323 Ill. 283.) There is no breach of duty, however, in insisting on the payment of a bill on an automobile belonging to the trust the title to which had been placed in another to avoid trust liability. Her demand to participate in the management of the trust is in accordance with the law that where a trust is in two or more jointly the concurrence of all is necessary to its execution, as held in *Dingman* v. *Boyle*, 285 Ill. 144. She had refrained from participation so long as no controversy between the beneficiaries existed and when strife arose it was encumbent on her to exercise her duties imposed by the trust agreement. She was not undertaking to take away the management of any of the properties from Clara Gawne and Laura Green, but to assist in the supervision of the trust and the accounts through a joint bank account. She was not inexperienced in that respect, as she had been a bookkeeper and understood double-entry bookkeeping.

The contention of appellants that the trust is void because in violation of the rule against perpetuities cannot be sustained. By its terms the trust is to automatically terminate upon the death of the last surviving donor and

upon its termination the *corpus* is to be divided as provided in the agreement. The fact that the time for distribution was added does not have the effect of rendering the trust's duration indefinite. Where equitable interests are vested in due time, the conferring upon a trustee of a discretion as to the time of distribution does not constitute a violation of the rule against perpetuities. (*Flanner* v. *Fellows,* 206 Ill. 136; *Armstrong* v. *Barber,* 239 id. 389.) In cases such as the instant case the weight of authority seems to be that while there is, in fact, a suspension of the power of alienation until circumstances are such that the trustee may make a *bona fide* decision that distribution should be made it is not such a restraint as is condemned by law. (Am. Juris. 41, p. 122, par. 85.) The time within which the exercise of such power is intended to be authorized depends upon the provisions of the instrument as a whole and the conditions and circumstances of the case. 89 A. L. R. 1048.

In this instrument the intent is clear that upon the death of the last surviving donor the trust should terminate, and the discretion as to the time of distribution does not constitute a violation of the rule against perpetuities, but should be construed to mean that distribution should be made within a reasonable time after the death of the last donor.

James D. Green, individually and as trustee, prosecutes a cross appeal in which he seeks to support plaintiffs' exhibit "A" as the genuine trust and to reverse the master's finding that he agreed to accept $300 a year in full of his compensation and that the same has been paid. The master's finding that he was entitled to no further compensation for defending and sustaining the trust was justified. The court reserved jurisdiction for determining the amount of compensation with expenses incurred by Helga Gawne in defending the trust, and the amount, if any, to be allowed to the attorneys for trustee Green. While the master prop-

erly found that cross appellant is entitled to reasonable compensation by the terms of the trust agreement, his further finding that the parties afterwards agreed upon $300 a year and that he accepted the same for a number of years is not contrary to the manifest weight of the evidence.

The decree of the circuit court confirming the master's report is therefore affirmed.

*Decree affirmed.*