Homer Johnson, Frank Johnson and Alice Johnson Foushee, Individually and as Executors of, and Trustees Under Last Will and Testament of William H. Johnson, Deceased, Plaintiffs-Appellants, v. Dorothy Pearl Sarver et al., Defendants-Appellees.

Gen. No. 10,674.

Opinion filed July 2, 1953. Released for publication July 20, 1953.

WILSON, WILSON & RAINEY, of Princeton, and CLARENCE W. HEYL, of Peoria, for appellants.

JOHN G. BOYLE, JR., of De Kalb, and SEARS & STREIT, of Chicago, for certain appellee; BARNABAS F. SEARS, and DAVID H. ARMSTRONG, both of Chicago, and JOHN G. BOYLE, JR., of De Kalb, of counsel.

POOL & LANGER, of Ottawa, for certain other appellees.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

On November 6, 1941, William H. Johnson, a resident of Bureau county, Illinois, executed his will and thereafter, on March 22, 1944, a codicil thereto. On November 20, 1944, he died, and subsequently this will and codicil were duly admitted to probate by the county court of Bureau county. By his will and codicil the testator devised and bequeathed all his estate, after the payment of debts, to his daughter, Alice Johnson (now Alice Johnson Foushee), and to his two sons, Homer and Frank Johnson, three of testator's children, in trust. On April 25, 1949, the instant complaint was filed in the circuit court of Bureau county by the three children as individuals and as trustees, asking

567

the court to confirm their testamentary appointment and for instructions in regard to certain matters set forth in paragraph 15 of the complaint. Answers and counterclaims were filed, and upon a hearing by the chancellor, a decree was entered construing the will of William H. Johnson, deceased, confirming the appointment of trustees and giving them certain instructions. From this decree the plaintiffs prosecuted an appeal to the Supreme Court of this State, and that court transferred the cause to this court (*Johnson v. Sarver,* 413 Ill. 626). Its opinion states the facts quite fully and to a large extent is repeated here.

The record discloses that Mary Jane Johnson, the wife of the testator, William H. Johnson, died intestate in 1937 leaving her surviving her husband and nine children. One child, Harry Johnson, died intestate subsequent to the death of his mother and prior to the death of his father, William H. Johnson. Dorothy Pearl Sarver and Mary Johnson are surviving children of said Harry Johnson, deceased, and these parties and all other heirs at law of William H. Johnson and all the beneficiaries of the trust created by the will of the said William H. Johnson were made parties to this litigation and are appellees here.

At the time of the death of William H. Johnson in 1944, he was in possession of seven farms, referred to in the record as the Home, Miller, Fisher, Becker, Hoover, School, and Morgan farms. In another farm of 240 acres, referred to in the record as the Bowen farm, he was the owner in fee of an undivided one-third interest therein. This Bowen farm had been owned by Thomas Bowen, who devised it to his daughter, the said Mary Jane Johnson, who owned it in fee at the time of her death. Upon her death, her husband, William H. Johnson, became the owner of an undivided one-third thereof, and each of her nine children became the owner of an undivided two twenty-

sevenths interest in said Bowen farm. After the mother's death the nine children, including the said Harry Johnson, conveyed their undivided interests in this farm to their father for his lifetime, reserving the remainder to themselves. The Home farm consisted of 267 acres. This farm included an eighty-acre tract of which testator owned an undivided one-ninth interest; the remaining eight-ninths interest was owned by testator's eight living children, and upon the hearing it was stipulated that only the title to an undivided one-ninth of this eighty-acre tract passed to the trustees under the provisions of the will and codicil of William H. Johnson. In addition to these farms, William H. Johnson also owned a residence in Princeton and a business building in Wyanet and a substantial amount of personal property.

The will and codicil provided that the trustees were to operate the farms and other business and divide the income into ten shares annually, paying one share to each of the testator's nine children and dividing the tenth share equally between certain religious charities. The trust was to terminate upon the death of the last survivor of six named children and two named grandchildren and the corpus distributed among the testator's heirs at law *per stirpes*.

The eighth paragraph of the will provided that the named trustees "shall receive in full of their compensation and allowance for legal advice and service the sum of Five Hundred and no/100 ($500.00) Dollars per year while acting as such trustee." This amount was increased to $600 per year by the second paragraph of the codicil.

The ninth paragraph of the will provided that the said Bowen farm, hereinbefore referred to, should "go into and be distributed at my death with and as a part of my own estate and be dealt with as though I were in possession thereof and held title in fee sim-

569

ple to the same at the time of my death, and I hereby direct that the said real estate in the settlement of my estate be subject to and disposed of under and by the provisions of this my last will and testament." The tenth paragraph of the will provided that any of the heirs of testator's wife who objected to the Bowen farm being so treated should forfeit from his or her share of testator's estate a sum equal to his or her interest in the real estate so owned by his or her mother at the time of her death and that the amount so forfeited should be divided among the beneficiaries under testator's will in proportion to the shares he, she, or they would take under the will.

The seventh paragraph of the will, which provided that any beneficiary who should contest the will or aid in contesting it should be barred from taking any share of his estate, was, by the fifth paragraph of the codicil, changed and modified to read as follows: "Should any beneficiary or beneficiaries under this my last will and testament object to the probating thereof or in any way directly or indirectly contest or aid in the contesting of the same or any of the provisions thereof or of the management of my estate and the distribution of the income thereof as provided in this my last will and testament, then and in that event I hereby annul any and all bequests herein made to such beneficiary or beneficiaries and it is my will and I hereby direct that such beneficiary or beneficiaries shall be absolutely barred and cut off from any share or part of my estate, except to such portions of my estate above mentioned as is known and described as (here follows the legal description of the Bowen farm) . . . . In reference to which real estate, it is my will and I hereby direct if they or either of them so elect, such person or persons *my* (sic) take the same share or interest in the said above-described real estate as such persons would otherwise taken

under and by virtue of the last will and testament of Thomas Bowen, deceased, and that such person or persons be excluded from any and all participation in the remainder of my estate and completely barred from taking anything under this, my last will and testament, or inheriting any part or portion of my said estate whatsoever." This paragraph of the codicil contained no provision for disposition of any portion of the estate forfeited thereunder.

Paragraph 15 of the complaint alleged that certain questions have arisen in regard to the administration of the trust and requested the court to direct the trustees in connection with their duties. Only subparagraphs F, G, and H thereof need be noticed upon this appeal.

In subparagraph F of paragraph 15 of the complaint, the plaintiffs referred to the eighth clause of the will as modified by clause second of the codicil and represented that it was the intention of decedent that each of said trustees should receive the sum of $600 per year for his or her services and that it was the intent of said testator that their attorney should be allowed an extra sum of $600 per year for legal services and asked the court to so construe these clauses.

Subparagraph G of paragraph 15 of the complaint alleges: "That at the time of the death of decedent, a part of his Estate consisted of seven farms, and one farm which had previously been owned by decedent's wife in her lifetime, and which is operated as a part of this Trust. The buildings and fences on all of said farms were in a ruinous condition, had not been repaired, remodelled, or improved for many years. These Trustees have made repairs and improvements to such buildings and fences, and have erected certain new buildings as will be shown by a report to be later

filed herein. Approval of such action and expenditures is requested."

Subparagraph H of paragraph 15 of the complaint alleges that "Two distributions have been made to the parties herein, totalling $4,000.00 to each main share under stipulation between all of the parties as to certain matters and things in dispute, but no distribution has been made to defendants, Dorothy Pearl Sarver and Mary Johnson Bartlett, for the reasons set forth in Sub-Paragraph A of this Paragraph 15 of this Complaint. Approval of such distribution is requested." The reasons set forth in subparagraph A for not making a distribution to Mrs. Sarver and Mrs. Bartlett were that their father, Harry Johnson, at the time of his death was indebted to the testator in a substantial amount and that Mrs. Sarver and Mrs. Johnson had agreed to forego any distributive share to which they might be entitled until their father's obligation to William H. Johnson should be fully paid and discharged.

The prayer of the complaint was that the plaintiffs be confirmed in their appointment as trustees under the will and that they be instructed as to matters set forth in paragraph 15 of the complaint.

The defendant, Orrie Johnson, husband of Elvira Johnson, filed a separate answer admitting all of the allegations of the complaint so far as the questions raised on this appeal are concerned. Clay Johnson and Ruth Johnson Dremann answered and filed a counterclaim, as did the defendant, Elvira Johnson. The answer of Elvira Johnson admitted the allegations of paragraph 15 G of the complaint with the exception of that part thereof which alleges that certain repairs and improvements were made by the trustees which she specifically denied.

In her counterclaim Elvira Johnson alleged that uncertainty exists as to whether the testator intended

572

to include in his will the Bowen farm, inasmuch as the beneficiaries of the trust estate took no interest therein under the will of Thomas Bowen and that a further doubt and uncertainty exists as to whether the Bowen farm would pass under the terms of the will and whether the terms and provisions of the will and codicil are not so conflicting, uncertain and ambiguous that the beneficiaries are not required to make any election. It was further alleged that a doubt and uncertainty exists as to the extent of forfeiture that the testator intended to impose in the event an election is required and that the beneficiaries of the trust should not, in any event, be required to make an election until the intent of the testator in respect to these matters is determined. This counterclaim prayed that the court ascertain the true intent and meaning of the testator in regard to these matters. The prayer of the counterclaim of Clay Johnson and Ruth Johnson Dremann was that the court determine, among other things, whether the trustees may lease and rent any part of the real estate corpus of said trust to themselves or to the son or husband of one of the trustees or to members of the family of any of the trustees and also determine whether the trustees are required to make a detailed report of receipts and disbursements as to each farm. The allegations of the several counterclaims were not replied to by any of the counterdefendants.

At the conclusion of the hearing upon the issues presented by the pleadings, the chancellor entered a decree confirming and approving the appointment of plaintiffs as trustees, holding certain clauses of the will and codicil invalid, and declared the title to an undivided one-third of the Bowen farm to be vested in appellants as trustees. The chancellor held that the testator attempted, by the ninth and tenth paragraphs of his will and by the fifth paragraph of the

codicil, to cause all beneficiaries to make an election between receiving a certain share of income of and from his estate and asserting their ownership of the Bowen farm but that no provisions were made therein for the devolution of said land in the event of such forbearance, as the trustees have no authority to distribute the corpus of the trust; that the legal effect of the ninth clause of the will and the fifth clause of the codicil is to make a direct devise in fee simple of the Bowen farm to his heirs at law subject to an undivided 2/81 interest therein owned by Effie Johnson, the widow of Harry Johnson, deceased; that no election is required by any of the parties, and that clause ten of the will does not limit, add to, or detract from the right of the heirs at law of the decedent to their ownership thereof; that the trustees shall in the future refrain from leasing any of the trust real estate to any of the trustees or their families; that each trustee is not entitled to receive $600 annually, but that $600 was the aggregate amount to be allowed annually to the three trustees; that the trustees must keep separate accounts of receipts and expenditures from each farm and make annual reports to the court.

Appellants insist that the Bowen farm is a part of the trust estate, and their counsel argue that the beneficiaries of the trust created by this will were given a choice of claiming their rights in the Bowen farm or taking the benefits provided for them under testator's will; that they have accepted distributions of income from the trustees and thereby elected to take the benefits provided by the will and conclude that this election so provided for in testator's will is already an accomplished fact. Appellees, Clay Johnson and Ruth Johnson Dremann, two of the children of the testator, have filed a brief herein, and their counsel call our attention to the fact that while they answered the complaint and filed a counterclaim, the

only relief they asked in their counterclaim was that the court ascertain the interest of Effie Johnson, surviving widow of their deceased brother, Harry Johnson,. in the Bowen farm and that the trustees be required to account to her for her share of the income therefrom; that they have at all times consistently treated the Bowen farm as a part of the trust estate, advanced no claim to it, and disclaim any responsibility for the findings and decree of the chancellor in respect thereto and conclude that the chancellor erroneously held that this farm was not a part of the corpus of the trust.

The only other appellee who has appeared in this court and filed a brief is Elvira Johnson, a daughter of the testator. Her counsel insist that the question whether appellees by accepting a share of the income from the trust thereby elected to abide by the directions contained in the will is not reviewable because it was not an issue made by the pleadings and call our attention to the fact that the only allegation as to the ownership of the Bowen farm is contained in paragraph 15 G of the complaint as follows, viz:— "That at the time of the death of decedent, a part of his Estate consisted of seven farms and one other farm which had previously been owned by decedent's wife in her lifetime and which is operated as a part of this Trust. The buildings and fences on all of said farms were in a ruinous condition, had not been repaired, remodelled, or improved for many years. These Trustees have made repairs and improvements to such buildings and fences, and have erected certain new buildings as will be shown by a report to be later filed herein. Approval of such action and expenditures is requested." The answer of Elvira Johnson, as well as the answer of Clay Johnson and Ruth Dremann, admitted these allegations, and the answers of these defendants also admitted the allegations of paragraph

575

15 H of the complaint as to the receipt of two distributions aggregating $4,000 under a stipulation between all the interested parties. The counterclaim of Elvira Johnson alleged that the beneficiaries were not. required to make any election because of the conflicting, uncertain and ambiguous provisions of the will and codicil, but if the court held they were required to elect, the election should not be required until the intent of the testator could be determined.

 In commenting upon the contention of appellants that the election provided for by testator's will in regard to the Bowen farm is already an accomplished fact, the Supreme Court (413 Ill. 626) at p. 632 said: "This is contrary to the pleadings and there is no evidence in the record to support it." The decree appealed from held that by the ninth and tenth paragraphs of the will and the fifth paragraph of the codicil the testator attempted to cause all beneficiaries to make an election between receiving a certain share of income of and from his estate and asserting their ownership of the Bowen farm but that no provisions were made therein for the devolution of said land in the event of such forbearance, as the trustees have no authority to distribute the corpus of the trust; that the legal effect of the ninth clause of the will and the fifth clause of the codicil is to make a direct devise of said land to the heirs at law of decedent in fee simple, *per stirpes,* subject, however, to the undivided 2/81's thereof owned by Effie Johnson; that no election is required by any of the parties, and that the tenth clause of the will does not add to, or detract from, the right of the heirs at law of decedent to their ownership thereof. In our opinion there has been no election by any act of any of the heirs at law of the testator to have the title to their respective interests in this land pass to the trustees under these several provisions of the will and codicil of the testator, and the chancellor

did not err in holding that the testator made a direct devise of the Bowen farm to his heirs at law *per stirpes* and that it was not a part of the trust estate.

██ Counsel for appellant recognize that the general rule is that a trustee may not deal with trust property in his individual capacity but insist that an examination of the will and codicil of the testator, in the instant case, discloses that it was the intention of the testator to confer upon his trustees the right to lease the trust real estate to two of the trustees, Homer and Frank Johnson, and to the husband of the third trustee, Wren Foushee. The record discloses that at the time of the hearing Homer Johnson occupied the Home farm, and had since the death of his father under a share lease executed by the three trustees; that the Bowen farm is rented to Wren Foushee, husband of Alice Johnson Foushee and has been since 1940; that prior to that time he lived on one of the other farms belonging to the testator; that trustee Frank Johnson has occupied the house in Princeton since the death of his mother in 1937 and has paid the trustees a rental of $50 per month for two or three years prior to the hearing; that he lived in the house prior to the death of his father and paid no rent therefor; that immediately after his father's death he commenced to pay rent at $300 per year; that he occupies the downstairs and one room upstairs, and Gale Johnson, son of trustee Homer Johnson, with his wife and child occupies the remaining rooms upstairs and pays no rent therefor. Ruth Johnson Dremann testified that in her opinion the value of this property at the time of the hearing was $16,000, and the fair cash rental value of the house per month was $100—$60 for the downstairs apartment and $40 for the upstairs apartment.

Counsel call our attention to the provisions of the will which directs the trustees to take charge of and manage testator's estate "as to them shall, in their

577

judgment, appear to be for the best interests of the estate" and to paragraph B of the second clause which directs the trustees to "carry on the farming and other business affairs of my estate as nearly as possible and as circumstances will permit as I am now and have for many years last past done . . ." Counsel argue that this is not a case where trustees take advantage of their position to rent trust property to themselves but, in the instant case, the trustees were, at the time of their father's death, and for a long time before, lessees; that the testator therefore must have been favorably impressed with their business ability and stability of character or he would not have made them trustees and never intended that they should be required to move off of these farms which they had satisfactorily farmed for years. In this connection counsel call our attention to the fact that $600 is the nominal compensation provided by the testator for the heavy responsibilities which he imposed upon his three children whom he named as trustees and conclude that he must not have intended for them to make the additional financial sacrifice of having to move off the real estate where they had lived for so many years.

██ There is no specific provision authorizing the trustees to lease the trust property to themselves. At the time of testator's death, some of the farms which he owned were leased to his children and some to strangers and others he, himself, was operating with hired help. The language he used does not indicate that he intended that the trust he created should be administered differently from any other trust. Certainly there is no merit in the suggestion of counsel that the testator intended for them to lease the real estate to themselves as additional compensation for their services as trustees. If the testator had intended his trustees to have this power to lease to themselves, he would have explicitly so stated. He specifi-

cally provided that all of his children were to receive equal shares and, in order to bring that about, no well-established rule of law applied in the administration of trusts should be violated.

In *Green v. Gawne*, 382 Ill. 363, 374, it was held that a trustee cannot deal with trust funds for the benefit of the trustee or any member of the trustee's family. In the early case of *Thorp v. McCullum*, 1 Gilm. 614, it was held that trustees sustaining a fiduciary and confidential relation cannot deal on their own account with the thing or persons falling within that trust or relationship. This case has been cited and followed many times. See *Bennett v. Weber*, 323 Ill. 283; *Victor v. Hillebrecht*, 339 Ill. App. 254; *Galbraith v. Tracy*, 153 Ill. 54; *Winger v. Chicago City Bank & Trust Co.*, 325 Ill. App. 459; and *Bold v. Mid-City Trust & Savings Bank*, 279 Ill. App. 365, all cited by counsel for appellees.

 Counsel for appellants state that the holding of the chancellor to the effect that the trustees must refrain from self-dealing and cease to occupy their homes as tenants unduly discriminates against them, inasmuch as none of the other children were required to abandon their accustomed modes of making an independent living in order to share in the benefits of the trust. Counsel argue that if it is true that Frank Johnson, one of the trustees who occupies the dwelling in Princeton, is not paying enough rent, the dissatisfied beneficiaries can go into court and procure an order that he should pay more. The law does not contemplate that a beneficiary of a trust must set in motion the processes of a court of equity in order to obtain what he is entitled to. A trustee must maintain a high level of conduct and owes to those whose property he controls undivided loyalty. It is not compulsory or mandatory that any of the trustees accept the appointment made by their

father. They have accepted and asked the court to instruct them as to their duties, and if they are dissatisfied with the amount of compensation or any other requirement which the court has imposed, there is a method by which they can be relieved of their duties.

The second clause of the codicil which modified the eighth clause of the will provided that the trustees "shall receive in full of *their compensation* and allowance for legal advice and services the sum of $600.00 per year *while acting as such Trustee* . . ." [Italics added.] Appellants insist that the controlling words in this clause are, *"while acting as such Trustee,"* and that the chancellor erred in not construing this clause to allow each trustee $600 per year while acting as trustee. Counsel for appellees insist that the words "their compensation" are determinative and that the chancellor correctly held that the trustees are entitled to $600 per annum while acting as trustees, said amount of $600 to be divided between them as they see fit. The compensation to be paid the trustees for their services and the compensation for legal advice and services which they may require are embraced within this provision. To hold that each of the trustees is entitled to $600 annually would do violence to the language used by the testator. The chancellor held that the trustees are permitted to expend an additional $600 per annum for incidental legal advice relative to routine matters of the trust, and no question is raised as to the propriety of this holding.

The decree requires that the trustees "make and keep separate accounts and records of the separate farms showing all transactions of individual farms and a complete record of their acts, receipts and expenditures; that said trustees shall file a full and complete inventory herein showing all property and estate coming to their hands upon taking charge and

580

control of said estate; that they make and file a complete report and account from the time of their assuming the office of trustees to and as of June 30, 1951, within 90 days after the filing of this decree and annually as of June 30th of each year hereafter and attach to each report an inventory of assets then on hand." Counsel for appellants insist that to keep separate accounts and records showing all transactions of the several individual farms would require full-time bookkeeping assistance with added expense to the trust; that it would be impossible to correctly allocate some of the combined expenses without losing the economic advantage to the trust of the large purchasing power that it has by combining several farms; that the court had no authority to tell them how to keep their accounts, as the method of bookkeeping which they may use is entirely within the discretion of the trustees.

■ There is no merit in this contention. One of the oldest heads of chancery jurisdiction is the execution and control of trusts and trust funds, and where a great discretion is vested in the trustee the exercise of such discretion is subject to the control of a court of chancery and it is empowered to determine all questions that might arise in the administration of the trust (*Maguire v. City of Macomb*, 293 Ill. 441, 453).

■ Without separate accounts for each farm, neither the beneficiaries nor the court could know what every beneficiary and every court is entitled to know concerning the administration of this trust. Upon the death of the testator in 1944, appellants took possession of his property as trustees under his will. No inventory of the assets and no report of their acts and doings as trustees had been submitted to the parties interested up to November 26, 1951, the date the decree in this case was entered. The trustees are operating a very valuable business consisting principally

581

of eight separate and distinct farms, varying in size from 160 acres to 240 acres. Appellants have submitted themselves to the jurisdiction of the circuit court of Bureau county, and that court has required them to make annual reports which it will approve or disapprove. It follows that that court should have the authority to direct the manner in which the accounts of the trustees shall be kept.

We find no error in this record. The chancellor correctly construed the several provisions of testator's will involved in this appeal and properly decreed that appellants, as trustees, cannot lease the real estate involved in this trust to themselves or deal with themselves and, in view of the record, correctly decreed that appellants should keep separate accounts as to each farm. The decree is therefore affirmed.

*Decree affirmed.*