In the Matter of Last Will and Testament of Mary Gleeson, Deceased.
Con Colbrook, Trustee Under Last Will and Testament of Mary Gleeson, Deceased, Petitioner-Appellee, v. Helen Black et al., Respondents-Appellants.

Gen. No. 9,987.

Third District.

February 18, 1955.

Released for publication March 7, 1955.

H. Ogden Brainard, of Charleston, and Provine & Miley, of Taylorville, for appellants.

Hershey & Bliss, of Taylorville, for appellee; Rolland F. Tipsword, of counsel.

MR. PRESIDING JUSTICE CARROLL delivered the opinion of the court.

Mary Gleeson, who died testate on February 14, 1952, owned, among other properties, 160 acres of farm land in Christian county, Illinois. By her will admitted to probate March 29, 1952, she nominated Con Colbrook, petitioner-appellee (who will be referred to herein as petitioner), executor thereof. Petitioner was also appointed as trustee under the will and the residuary estate, including the aforesaid 160 acres of land, was devised to him in trust for the benefit of decedent's 3 children, Helen Black, Bernadine Gleeson, and Thomas Gleeson, an incompetent, who are respondents herein.

On March 1, 1950, the testatrix leased the 160 acres for the year ending March 1, 1951 to petitioner and William Curtin, a partnership. On March 1, 1951, she again leased the premises to said partnership for the year ending March 1, 1952. Upon the expiration of this latter lease the partnership held over as tenants under the provisions thereof and farmed the land until March

1, 1953, at which time petitioner leased the land to another tenant. While there is no written lease in evidence, the record indicates the terms thereof provided for payment to the lessor of $10.00 per acre cash rent and a share in the crops of ½ of the corn and ⅖ of the small grain.

The petitioner's appointment as trustee was confirmed by the circuit court of Christian county on April 29, 1953. On July 22, 1953, he filed his first semiannual report. This report was not approved and petitioner was ordered to recast the same in accordance with certain directions of the court. The recast report was filed December 5, 1953. To this report respondents filed certain objections. We are concerned here with only one of the said objections, which is as follows:

"1. Report shows trustee was co-tenant of trust real estate but fails to account for share of profits received by trustee as co-tenant which by law should be re-paid by him to trust estate."

The record indicates no dispute as to the fact that petitioner as trustee leased a portion of the real estate of the trust to himself as a partner of William Curtin and that petitioner received a share of the profits realized by him and Curtin from their farming operation of said real estate.

Upon a hearing the court entered an order overruling the objection of the respondents to the report. From such order respondents have brought this appeal.

It is contended by respondents that the circuit court erred in overruling their objection for the reason that the law prohibits a trustee from dealing in his individual capacity with the trust and making a profit from such dealings.

■ The courts of this state have consistently followed a general principle of equity that a trustee cannot deal in his individual capacity with the trust property. It was announced in the early case of Thorp v. Mc-

Cullum, 1 Gilm. 614. It has since been followed in many cases involving the relationship between the trustee and the trust property. Bennett v. Weber, 323 Ill. 283; Victor v. Hillebrecht, 339 Ill. App. 254; Green v. Gawne, 382 Ill. 363; Galbraith v. Tracy, 153 Ill. 54; Johnson v. Sarver, 350 Ill. App. 565.

██ Petitioner recognizes the existence of this general rule, but argues that because of the existence of the peculiar circumstances under which the petitioner proceeded, the instant case must be taken to constitute one of the rare exceptions to such rule. The circumstances alluded to as peculiar are pointed out as being the facts that the death of Mrs. Gleeson occurred on February 14, 1952, only 15 days prior to the beginning of the 1952 farm year; that satisfactory farm tenants are not always available, especially on short notice; that the petitioner had in the preceding fall of 1951 sown part of the 160 acres in wheat to be harvested in 1952; that the holding over by the trustee and his partner was in the best interests of the trust; that the same was done in an open manner; that the petitioner was honest with the trust; and that it suffered no loss as a result of the transaction.

Petitioner's argument that the foregoing constitutes circumstances bringing this case within any exception to the general rule does not appear to be supported by the authorities. In Sherman v. White, 62 Ill. App. 271 and Bold v. Mid-City Trust & Savings Bank, 279 Ill. App. 365 cited by petitioner, the court followed the general rule announced in so many cases to the effect that a trustee may not deal with trust property in his individual capacity. While giving recognition to the rare exception that a trustee may, under certain circumstances, be entitled to make a personal gain out of the trust property, the court in both cases adhered to the general rule as above stated. While on the facts these two cases differ from that presented by the instant record, the basic problem with which the court dealt

64

in each instance was the same. The question for decision on this appeal was whether the record reflects a sufficient reason for permitting the petitioner to deal with the trust property for his own individual benefit.

Petitioner contends that since only 15 days intervened between the death of Mrs. Gleeson and the beginning of the farm year, and that good tenant farmers might not be available at such a time, it was in the interests of the trust that the petitioner continue to hold over for the year of 1952. No showing is made that petitioner tried to obtain a satisfactory tenant to replace Colbrook and Curtin on March 1, 1952. The record discloses that subsequent to the death of testatrix, petitioner discussed continuance of the farming operation with two of the beneficiaries under the trust and voluntarily raised the cash rent from $6.00 to $10.00 per acre. This evidence tending to show that petitioner was interested in continuing a tenancy under which he was leasing trust property to himself would seem to refute any contention that an effort to lease the property to any one other than the partnership was made. The fact that the partners had sown wheat on the land in the fall of 1951 cannot be said to be a peculiar circumstance. It is not suggested that the trust would have suffered a loss if someone other than the petitioner had farmed the land in 1952 and harvested the wheat. It would appear that a satisfactory adjustment covering the matter of the wheat could have been made between the trust and the partnership without great difficulty.

The good faith and honesty of the petitioner or the fact that the trust sustained no loss on account of his dealings therewith are all matters which can avail petitioner nothing so far as a justification of the course he chose to take in dealing with trust property is concerned. Joliet Trust & Savings Bank v. Ingalls, 276 Ill. App. 445; Michoud v. Girod, 4 How. 503.

Petitioner contends, under sections 10 and 12 of chapter 59, Illinois Revised Statutes 1953 [Jones Ill. Stats. Ann. 55.10, 55.12], that petitioner did not take the land in question as trustee until the debts of the testatrix were fully discharged and therefore petitioner could not have been both trustee and tenant during the year 1952. From the record it is evident that the petitioner regarded himself as being trustee during the time covered by his tenancy of the trust property, as his report is for the period from June 8, 1952 to June 30, 1953. The sections of the statutes cited by petitioner do not apply to the situation presented on this appeal.

We think the holding of the court in Johnson v. Sarver, supra, is applicable to the question to be decided in the instant case. Among the questions with which the court dealt in that case was the right of trustees to lease real estate of the trust to themselves. Holding that the trustees were without power to do so, the court had this to say:

"Counsel for appellants state that the holding of the chancellor to the effect that the trustees must refrain from self-dealing and cease to occupy their homes as tenants unduly discriminates against them, inasmuch as none of the other children were required to abandon their accustomed modes of making an independent living in order to share in the benefits of the trust. . . . A trustee must maintain a high level of conduct and owes to those whose property he controls undivided loyalty. It is not compulsory or mandatory that any of the trustees accept the appointment made by their father. They have accepted and asked the court to instruct them as to their duties, and if they are dissatisfied with the amount of compensation or any other requirement which the court has imposed, there is a method by which they can be relieved of their duties. . . .

"The chancellor . . . properly decreed that appellants, as trustees, cannot lease the real estate involved in this trust to themselves or deal with themselves. . . ."

We think the decision in the foregoing case suggests that the petitioner herein, upon the death of the testatrix, instead of conferring with her beneficiaries concerning continuance of his tenancy of the trust property, should have then decided whether he chose to continue as a tenant or to act as trustee. His election was to act as trustee and as such he could not deal with himself.

This court, therefore, reaches the conclusion that the circuit court erred in overruling respondent's objection no. 1 to the trustee's amended first semiannual report, and that petitioner should have been required to recast his first semiannual report and to account therein for all monies received by him personally as a profit by virtue of his being a cotenant of trust property during the 1952 crop year, and to pay the amount of any such profit to the trust.

The judgment of the circuit court of Christian county is reversed and the cause remanded to that court with directions to proceed in a manner consistent with the views herein expressed.

Reversed and remanded.