Harlan P. McNair, Plaintiff in Error, *vs.* Charles T. Montague *et al.* Defendants in Error.

*Opinion filed October 28, 1913—Rehearing denied Dec. 4, 1913.*

1. Wills—*when grandson does not take a vested estate with right of possession postponed.* Where a testator devises all of his property to his son in trust, a provision that the trustee shall hold one-half of the estate in trust for the benefit of the testator's grandson until he shall attain the age of fifty years, when it shall be vested in him or his legal heirs, the trustee to have the exclusive privilege of making the division of the property, and, if he becomes satisfied that the grandson is capable of handling the portion of the estate intended for him, to invest him with such portion or any part thereof, does not give the grandson a fee with the right of possession postponed but the fee is in the trustee.

2. Same—*when a trustee takes the fee simple title.* Where a testator devises his entire estate, both real and personal, to his son as trustee, with full power to sell, convey or convert the same as his judgment might dictate, the estate and its proceeds to be held in trust for the purposes specified, the trustee must take a title sufficient for the exercise of his powers, and takes, therefore, a fee simple title.

3. Same—*direction to devisee to execute a will devising estate to trustee will not be construed to mean a naked trust.* Where a testator, after devising all of his estate to his son as trustee, provides that the son shall have one-half of the estate for life but directs that the son shall make a will providing that in case of his death·before the testator's grandson attains the age of fifty years all of the estate left by the son shall go to said grandson "or his trustee," the word "trustee" will not be construed as meaning a trustee of the naked legal title, but will be held to authorize the son to name a trustee to carry out the terms of the trust.

4. Trusts—*when sole power to make division is in a court of equity.* Where a will devises one-half of the testator's property to a trustee, who is to have the exclusive privilege of making the division of the property, but the trustee dies before making such division, the only power to make the division is in a court of equity, there being no authority given the trustee to appoint a successor in trust.

Writ of Error to the Circuit Court of Coles county; the Hon. William B. Scholfield, Judge, presiding.

260 — 30

VAUSE & HUGHES, ANDREW L. CHEZEM, and H. A.
NEAL, for plaintiff in error.

CRAIG & KINZEL, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the
court:

The plaintiff in error, Harlan P. McNair, who had been
named as trustee under the wills of Truman W. Montague
and Joel A. Montague, filed his bill in the circuit court of
Coles county against the defendants in error, Charles T.
Montague and others, asking the court to appoint him trus-
tee under said wills and fix his bond and seeking the aid
of the court in constructing the wills and in the execution
of the trusts. Susan C. Montague, widow of Joel A. Mon-
tague, filed a cross-bill, which was dismissed on her motion.
Charles T. Montague answered the bill and filed a cross-bill,
and the cause was heard on the original bill and cross-bill
and answers and replications. The court adopted the con-
struction of the wills insisted upon in the cross-bill, re-
moved Harlan P. McNair from the position of trustee under
the will of Truman W. Montague and appointed another
trustee. A writ of error was sued out of this court, and
the record is here for review.

Joel A. Montague was the only son of Truman W.
Montague, and had an only son, Charles T. Montague, one
of the defendants in error. On August 20, 1897, Truman
W. Montague made his will, and the provisions material to
this controversy are as follows:

"*Second*—After payment of such debts, if any, I de-
sire that my entire estate, both real and personal, of what-
ever character, shall be held in trust by my only son, Joel
A. Montague, for the following purposes: That after pay-
ing all taxes, debts and claims against my estate, the in-
come on the entire estate, both real and personal, shall go
to my son, Joel A. Montague, for his own personal use

or re-investment for my estate, as he may wish, with full power to sell, convey or convert, as his judgment may dictate; second, that my son, Joel A. Montague, shall have one-half of my estate, both real and personal property, during his natural life, but it is my desire and request that my son, Joel A. Montague, shall cause to be made and prepared, executed and delivered to some respectable person, a will which shall provide that in case of his death before his son, Charles T. Montague, shall attain the age of fifty years, that all my estate, both real and personal, left by him, with its accumulations, if any, shall by such will be willed to my grandson, Charles T. Montague, or his trustee.

"*Third*—The other remaining one-half of my estate, both real and personal, to be held by my son, Joel A. Montague, in trust for the benefit and use of his son, Charles T. Montague, until he shall attain the age of fifty years, when the same shall be invested in the said Charles T. Montague or his legal heirs, and my son, Joel A. Montague, shall have the exclusive privilege of making the division of said property. It is also provided that if my son, Joel A. Montague, shall become satisfied that my grandson, Charles T. Montague, is capable and can handle the portion of my estate, or any part of the same, intended for him, to the advantage of himself and the estate, then it is my wish and desire that the said one-half, or any part, shall be invested in him and placed in his control.

"*Fourth*—It is my will in the event my grandson, Charles T. Montague, should die before his father, Joel A. Montague, that all his interest in my estate, both real and personal, should revert to my son, Joel A. Montague. Then it is my will and desire that my son, Joel A. Montague, surviving his son, Charles T. Montague, that he shall have my whole estate, both real and personal, to will and dispose of after his death the same as if the estate was his own in fee simple, believing he will carry out my wishes for the best interest of my estate."

Joel A. Montague was appointed executor, and by the last paragraph of the will he was empowered to convey, convert and manage the estate as in his judgment should be for his and the grandson's interests.

Truman W. Montague died on February 10, 1902, and the will was left in the possession of the trustee, Joel A. Montague. The will was not presented for probate, but Joel A. Montague took possession of the property under the will and acted as trustee until his death. On May 2, 1910, he made his will, in which he recited that he owned and possessed the estate of his father, Truman W. Montague, in trust under his will, which was in his possession, for his son, Charles T. Montague, and he then devised to a trustee what would be left of the estate of his father, Truman W. Montague, at his death and also his individual estate, and directed that the trust should be administered in the following manner:

"(a) I will and direct that said trustee, and his successor after him, shall pay out of the income of the estate of Truman W. Montague, unto my son, Charles T. Montague, the sum of $125 per month until he shall reach the age of fifty years, or until he shall come into possession, under the terms of this and my father's wills, of all or part of the two estates, as and for a regular living allowance; but in case of sickness or other necessitous unforeseen circumstances of like character befalling him, the said trustee and his successors is and are hereby directed to meet the reasonable expenses of such contingency out of the funds arising and accumulating from the income of said estate derived from Truman W. Montague.

"(b) It is my will, and I hereby direct, that in case my son, Charles T. Montague, shall abstain from the excessive use of intoxicating drinks and shall abstain from gambling habits and gambling and shall marry and live with a virtuous and respectable woman, then in that event said trustee and his successor is hereby directed to deliver unto my said

son free possession of my son's choice of the houses of the said estate of Truman W. Montague, to be used and occupied only by my said son and his family as a family home so long as he shall continue in said good habits and shall with them occupy the same; and I further will and direct that in case my said son shall abstain from drinking and gambling and shall marry as aforesaid, I direct my said trustee, without demand therefor, and his successors likewise, to monthly pay and render unto my said son the whole regularly accruing and following income of the estate derived through Truman W. Montague as the same shall accrue, after first deducting therefrom the regular cost of administering said trust in relation thereto, together with the necessary and regularly accruing repairs, taxes, insurance, etc., as the same shall accrue, including the regular salary of the said trustee or his successor in trust, which income so delivered, when so delivered, shall be in lieu of my son's former regular monthly allowance from the estate derived through Truman W. Montague, it being my desire, in that event, that said trust continue only for the better assistance and protection of my son.

"(c) I further will and direct that upon the arrival of my son, Charles T. Montague, at the age of fifty years the said trustee then acting shall deliver and surrender unto him all of the personal assets of the estate derived through Truman W. Montague which then remain in his possession as trustee, including the accrued and accruing income of the real estate derived through Truman W. Montague as the same shall accrue, less the regular items of expense heretofore herein charged upon the same for their preservation and the administering of this trust, the said trust office, however, to continue in relation to the real estate until my said son, Charles T. Montague, shall arrive at the age of sixty years, at which time, if my said son shall have continued in his habits of abstinence from gambling and drinking and is physically able to take and manage the

balance of said estate, the trust as to the estate of Truman W. Montague shall be wholly surrendered to him, and therewith shall also deliver and surrender unto him, free and clear of said trust, in fee simple, all that remains of all my property, real, personal and mixed, not herein otherwise disposed of and willed to other persons and uses, subject to the charges and expenses of preserving the same and of administering said trust and the costs of the court."

On January 19, 1911, Joel A. Montague made a codicil to his will, substituting for the executor and trustee previously appointed, the Mattoon Trust Company, and in the event that the trust company did not act, appointed the plaintiff in error, Harlan P. McNair, executor and trustee of his will and of the will of Truman W. Montague, in case it should be necessary that the last mentioned will should be probated. After the death of Joel A. Montague the wills were admitted to probate by the county court of Coles county, and the plaintiff in error alleged in his bill that he was appointed by that court executor and trustee, as provided in the will of Joel A. Montague in case the Mattoon Trust Company did not act.

No question was raised by the original or cross-bills touching the management of the trust by Joel A. Montague in his lifetime, and there was no ambiguity in the third paragraph of the will of Truman W. Montague, by which he devised one-half of his estate to Joel A. Montague in trust for the benefit and use of the testator's grandson, Charles T. Montague, until the grandson should attain the age of fifty years. The circuit court construed that paragraph as giving to Charles T. Montague a vested estate in fee simple, with the enjoyment of possession postponed until he should attain the age of fifty years. This we regard as incorrect, both on the ground of the devise of the fee to Joel A. Montague as trustee, and the provision that if the trustee should become satisfied of the capacity of Charles T. Montague to handle the portion of the estate intended

for him, to the advantage of himself and the estate, the property was to be invested in him and placed in his control, which gave the trust the character of a spendthrift trust. Another reason is that the trustee was to have the exclusive privilege of dividing the property, so that it could not be said that Charles T. Montague had a fee simple estate in any particular piece of property until the division should be made. There was also a personal trust reposed in Joel A. Montague to turn over that one-half of the estate if in his judgment the beneficiary became capable of handling the same judiciously, to the advantage of himself and the estate. Neither the discretion to divide nor to turn over the one-half can now be exercised by any other person but it will be within the power of the court of equity to make the division. Joel A. Montague had no power, by his will, to change or affect in any way the devise in the third paragraph and was not given power to appoint a successor in trust.

It was claimed by the cross-bill that the direction of Truman W. Montague that his son, Joel, should make a will giving one-half of the estate remaining at the death of Joel to the grandson, Charles, only authorized a direct devise to Charles, either in terms or to a trustee under a naked trust, which would be executed by the Statute of Uses vesting the fee simple in Charles. The court so construed the will, and found "that said clause gave no power or authority to the trustee to be named by the said Joel A. Montague other than he should hold the naked office of trustee, and that the trust is a mere simple or dry one for the use and benefit of Charles T. Montague." There were ambiguities in the provisions of the will of Truman W. Montague, but the inconsistencies may be reconciled, and we regard the will as capable of such construction as will fulfill the testator's intentions without violating any rules of law. The testator first devised his whole estate in fee to his son, Joel A. Montague, in trust, with full power to

sell, convey or convert, as his judgment might dictate. In the concluding paragraph of the will the trustee was again empowered to convey, convert and manage the estate, both real and personal, as in his judgment would be for his and the grandson's interests. As the trustee had power to sell, convey or convert he took a title sufficient for the exercise of such powers, and therefore had a fee simple title. (*Preachers' Aid Society* v. *England,* 106 Ill. 125; *Coryell* v. *Klehm,* 157 id. 462; *Glover* v. *Condell,* 163 id. 566; *Spengler* v. *Kuhn,* 212 id. 186.) The statement that the income of the entire estate, both real and personal, should go to the trustee for his own personal use or re-investment for the estate, as he might wish, must be held to refer to personal control or dominion over the estate and not for beneficial use, because he immediately limited the devise to Joel A. Montague to one-half for life unless Charles T. Montague should die first, when Joel A. Montague was to have the whole. The trust was for the benefit of Charles T. Montague as to one-half of the estate and for the benefit of Joel A. Montague during his natural life, with the direction to execute a will providing that in case of a certain contingency that share, with its accumulations, should be willed to the grandson, Charles T. Montague, or his trustee. The holding of the court that the will only authorized Joel A. Montague to devise the property directly or to a trustee under a naked trust rendered the authority to devise to a trustee utterly senseless. A trustee under a naked trust is not vested with the title for a single moment, and is a mere conduit, through which the title passes directly to the usee. There is no difference whatever between a devise to an individual without naming any trustee, and a devise to him through the medium of a trustee with no active duties, and it is contrary to all rules of construction to treat words to which a rational meaning can be given as having no meaning at all. In our judgment the reasonable construction of the will is, that Joel A. Montague was given

authority, in his discretion, either to devise the fee to Charles T. Montague before he reached the age of fifty years, or to create a trust for him and make the devise to a trustee until he should reach that age. There was no need for requiring a will of one-half of the property to Charles T. Montague or his trustee if the intention was to vest title in Charles T. Montague as soon as Joel A. Montague should die. If it had been the purpose to give Charles T. Montague the property when his father should die, the natural method would have been to provide that upon the death of Joel A. Montague the one-half of the estate given to him for life should go to Charles T. Montague. The provision means nothing unless it means that the trustee named by Joel A. Montague in his will shall have control over the property until Charles T. Montague shall attain the age of fifty years. If it was intended that Joel A. Montague should have power to create a trust at all and to appoint a trustee, it must have been intended that he should prescribe the terms of the trust. It is, however, apparent, taking all the provisions of the will together, that Truman W. Montague intended that Charles T. Montague should have the fee at fifty years of age, or that it should go to his heirs upon his death before that time, if he survived his father.

Joel A. Montague made a will according to the expressed wish of Truman W. Montague, so that there is no occasion to consider the force or effect of the direction to him. He died before Charles T. Montague attained the age of fifty years, so that any question where the property devised to him would have gone under other circumstances is also out of the way.

Our conclusions are, that Charles T. Montague is entitled to the income from one-half of the estate devised by the third paragraph of the will of Truman W. Montague; that the court should provide for a division of the property

which Joel A. Montague was authorized to make; that Joel A. Montague was authorized to create a trust by his will in the one-half of the estate devised to him for life and to appoint a trustee to execute the trust; that if the income from the property devised by the third paragraph of the will of Truman W. Montague should be less than the sum of $125 per month it should be made up to that sum by income from the other half, and in like manner the reasonable expenses of sickness or other necessitous or unforeseen circumstances shall be supplied, if necessary, from the said other half; that if the conditions prescribed in clause (*b*) of the will of Joel A. Montague are fulfilled, Charles T. Montague shall have the choice of any houses which Joel A. Montague was able to devise, and the trustee shall pay to Charles T. Montague the income from the estate devised by Joel A. Montague; that the trust shall terminate upon the arrival of Charles T. Montague at the age of fifty years or at his death before that time, when the principal shall go to him or his heirs.

No reason was shown for the removal of the plaintiff in error, Harlan P. McNair, as trustee. There was no evidence whatever of unfitness, nor anything in the circumstances or situation of the two estates which would render him an improper person, and if power had been given to Joel A. Montague to appoint his successor as trustee under the third paragraph of the will of Truman W. Montague, we should regard the power as properly exercised and the decree removing the plaintiff in error as trustee of that part of the estate as unwarranted. Joel A. Montague, however, did not have such power, and therefore the plaintiff in error was never legally appointed as trustee under said third paragraph. The supposed removal was not, in fact, a removal, but the court appointed another person as trustee, and we cannot say that the discretion of the court was improperly exercised in making the appointment.

The decree is reversed and the cause remanded, with directions to enter a decree in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*