(No. 31825.

EDWARD H. CONANT *et al.,* Trustees, Appellees, *vs.* CAROLYN VDB. LANSDEN, Exrx., Appellant.——(THE PEOPLE *ex rel.* George F. Barrett, Attorney General, Intervening Petitioner-Appellee.)

*Opinion filed March 22, 1951—Rehearing denied May 21, 1951.*

150

GIFFIN, WINNING, LINDNER & NEWKIRK, of Spring-
field, and DAVID V. LANSDEN, of Cairo, for appellant.

JOE CRAIN, of Mound City, and DOROTHY WILBOURN SPOMER, of Cairo, for appellees Edward H. Conant *et al.;* IVAN A. ELLIOTT, Attorney General, of Springfield, (JOHN H. CARTER, of Anna, and C. S. CONGER, of Carmi, of counsel,) for appellee intervening petitioner.

Mr. JUSTICE CRAMPTON delivered the opinion of the court:

Under the will of Oscar Tamm, who died in 1913, a trust was set up for the principal purpose of constructing and maintaining good roads in Alexander County. Three trustees were appointed, one of whom was David Lansden, apparently the active and directing officer of the trust. In 1938, one of the other trustees died, and plaintiff Edward Conant was appointed successor trustee in his place. In 1944, after the death of David Lansden, the circuit court, on the petition of three taxpayers of the county, appointed the other two plaintiffs as successor trustees to fill the vacancies then existing. The three successor trustees thereafter filed this suit in the circuit court of Alexander County against the estate of David Lansden, praying for an accounting of his acts as trustee. The Attorney General of Illinois was permitted to intervene, on the ground that a charitable trust was involved.

The defendant filed an answer, together with a counterclaim for compensation on account of services performed by Lansden as trustee, and thereafter, pursuant to an order of the court, filed a report of Lansden's acts and doings as trustee during the entire period of more than thirty years. Numerous objections were made by plaintiffs to items in the report, and the matter was referred to a master in chancery for the taking of evidence. After the master made his report the chancellor heard and disposed of the objections to defendant's report and ruled on the other issues raised. A final decree was entered which found that, except as to two transactions handled by Lansden as trustee,

the plaintiffs' objections were not sustained by the evidence, and that the defendant estate was entitled to additional fees in the amount of $12,000 as compensation for Lansden's services. Because of the long period of time involved, the addition of interest on the losses in question more than doubled their original amount. After credit was allowed for the $12,000 fee the surcharges totalled $66,732.92. Defendant appealed to the Appellate Court, assigning as error the portions of the decree surcharging the estate for losses from transactions found to have been improper, and plaintiffs took a cross appeal, complaining of those parts of the decree which allowed compensation and which found the evidence insufficient to sustain their other objections. The Appellate Court affirmed the decree, and we thereafter granted defendant's petition for leave to appeal to this court.

The plaintiffs have assigned cross errors, questioning the correctness of the judgment of the Appellate Court on all matters presented by their cross appeal in that court. We have carefully examined such alleged cross errors and find that, except as to No. 5, in which they contend compound interest should have been charged upon the investments found to be improper, none of them are connected with the transactions with which defendant's appeal to this court is concerned. Defendant has filed a motion to dismiss such cross errors on the ground that plaintiffs have neither obtained separate leave to appeal nor otherwise satisfied the statutory requirements for a further review of those questions by this court. We think this position is well taken. Unlike a judgment at law, a decree in equity may have the effect of several separate decrees. Such is the nature of the case at bar. Each item in the account depends upon a different state of facts, wholly disconnected with the facts upon which the others are based, and the allowance or disallowance of the respective items are treated as separate adjudications for the present purpose. Thus, where an appellee fails to perfect a cross appeal to the

Appellate Court, he cannot file cross errors as to parts of the decree unrelated to the issues raised on the appeal. (*Kingsbury* v. *Powers,* 131 Ill. 182; *Millard* v. *Harris,* 119 Ill. 185.) It is true, as plaintiffs insist, that a cross appeal was taken in this case to the Appellate Court. But the questions presented remain separate and independent, and the rule referred to applies to further review by this court as well as to the initial review by the Appellate Court. Defendant's appeal brings nothing to this court except the decision of the Appellate Court concerning the surcharges and other matters to which his assignments of error are directed. While an appellee may assign cross errors on matters brought before this court by an appellant, cross errors cannot be assigned as to separate parts of a decree not brought before the court by appeal, even though the entire case was passed upon by the Appellate .Court. (*Walker* v. *Montgomery,* 236 Ill. 244.) The motion of defendant is, therefore, granted, except as to cross error No. 5, and the other cross errors will not be considered.

Defendant insists that the plaintiffs have no authority to bring this suit; that the order naming them trustees was entered *ex parte* on the petition of persons having no interest in the trust other than as members of the general public; and that the appointments were, therefore, void. The contention cannot be sustained. The decree in the present proceedings, in which it is not disputed that all parties are before the court, ratified and confirmed the previous appointment of plaintiffs as trustees and found plaintiffs to be proper parties to maintain the suit. Such action is within the power of a court of chancery and, where no error therein occurs of which the appellant can complain, its decree in this respect will not be disturbed. (*Pease* v. *Kendall,* 391 Ill. 193.) There is likewise no merit in defendant's further argument that the court is without power to ratify and confirm such *ex parte* appointments unless an inquiry is made into the subsequent acts

and doings of the trustees. No complaint of their acts is made by the Attorney General, who intervened to protect the charitable trust and who also adopted the original complaint in this suit, and the defendant has no such interest in the trust as would entitle her to do so.

Evidence relating to the first transaction upon which losses were surcharged against the defendant estate discloses the following facts: When Oscar Tamm died in 1913, his estate consisted principally of various parcels of real estate, most of which were located in and near the village of Tamms. The estate included comparatively little personal property or liquid assets, but was subject to obligations in a substantial amount. The decedent had been engaged in several business enterprises, among which was a general store in the village of Tamms, incorporated in 1907 as the Tamms Mercantile Company. The original subscribers for shares included Oscar Tamm, for 97 shares, and three other individuals, including David Lansden, for one share each, but it does not appear that Lansden had ever received his share or any dividends thereon. Although he became an officer of the company, there is no evidence that he was financially interested in it or ever received any benefits from it.

At the time of his death Oscar Tamm owned 59 shares, and for several years thereafter the store was operated at a substantial profit. In managing and operating the other properties in the estate, which included large tracts of cut-over timber land and low-grade farming land in the vicinity of Tamms, it was necessary to employ men to clear the land so that it could be farmed, and to employ others for work on the roads. These employees, together with a number of sharecroppers occupying farms owned by the estate, were unable to finance themselves, and it was necessary for the trustees to make advances to them. This was done in the form of orders on the Tamms Mercantile Company with which the men could buy groceries, clothing and

farm machinery. The orders were then paid by the trustees. There was no bank in Tamms, and other businesses frequently issued orders on the general stores and delivered them to employees in lieu of cash or a check on a bank.

It is not disputed that the trustees proceeded with an orderly and successful liquidation of the considerable amount of real estate left by Oscar Tamm; that with the proceeds of such sales and the income from other sources they properly paid off substantial obligations existing when the trust became effective; and that their services were, in general, diligent, essential and highly advantageous to the trust.

As a result of a general depression in 1919 and 1920, business conditions in rural areas became very unfavorable, and the Tamms Mercantile Company encountered serious financial difficulties. After 1921, it ceased paying rent to the trust, which owned the building occupied by the company. In 1922, the trustees loaned $4100 to the Tamms Company on an unsecured promissory note payable on demand, and in 1925 made a similar loan in the amount of $4198.52. Neither loan was ever repaid to the trust estate, and, in 1926, the company went out of business.

To support the position that surcharges for these items should not be sustained, defendant insists the loans were within the scope of authority conferred upon the trustees by the will. We agree that broad powers were given to the trustees. They were authorized to "manage, use and conduct all of my property, business and affairs in such manner as will, in their judgment, yield the best and safest income, interest and profits, so far as the objects of the trust hereby created will permit." They were also empowered to invest and reinvest, from time to time, "in such manner and upon such terms and conditions as in their judgment will best promote the objects of the trust." The loans were doubtless made not only as investments but also as a means of preserving the Tamms Mercantile Company,

the major part of which was owned by the trust and the operations of which were closely related to the management of other properties included in the trust estate. While the business was in some financial difficulty at the time, it had previously been operated at a substantial profit and the trustees could not reasonably be expected to foresee the severity of the depression which, together with the construction of better roads and the increase in automobile travel, accounted in large part for the failure of many small-town general stores of this type. Although ownership of a majority of its stock by the trust estate would not in itself justify such loans in the absence of appropriate powers conferred by the trust instrument, (See *Nonnast* v. *Northern Trust Co.* 374 Ill. 248,) we think the provisions of the present will were sufficient, under the circumstances existing in this estate, to protect the trustees in thus attempting to enable the Tamms Company to continue in business, notwithstanding the fact that it ultimately failed. The surcharges on account of these items should not, therefore, have been made.

The next surcharge is based upon the following entry appearing in the account book kept by David Lansden: "November 30, 1927—Alexander County Bank for interest as follows: . . . 6 mos. int. to 11/5/27 on three notes of Tamms Mer. Co. endorsed by Trustees for $5000.00, $5000.00 and $3100.00—$393.00." Plaintiffs contend that this shows endorsement of such notes on May 5, 1927, or six months prior to November 5, 1927, and that the making of such accommodation endorsements was clearly improper. We agree. At that time the Tamms Mercantile Company had gone out of business and a suit was pending in the circuit court of Sangamon County to dissolve the corporation. The acts had no reasonable relation to protection of trust assets or investment for income, and were beyond the scope of prudent judgment. The trustee should, therefore, be surcharged for any loss to the trust estate occa-

sioned thereby. The decree, however, treated the transaction as a loan whereby $13,100 was paid out on May 5, 1927, and surcharged the defendant estate with the entire amount plus interest from that date. This was clearly not justified by the facts disclosed in the record. There is no proof that any funds were paid out on May 5, 1927, and hence no loss to the trust had yet been sustained. The trust accounts show various subsequent disbursements upon the principal as well as for interest thereon, but the obligation was ultimately discharged for less than its face amount and the payments were made long after the date of the endorsements. Manifestly, the trustee cannot be surcharged with interest for the periods before any loss was incurred, or with a principal sum which exceeds the actual amounts expended. The surcharge must be confined to actual disbursements made on account of the improper transaction, and interest may be computed only from the dates of such disbursements.

The second transaction on account of which surcharges were ordered against defendant estate concerns the Denison-Gholson Dry Goods Company, to which several loans were made by the trustees. In March and April, 1922, they made four loans to this company in the amount of $5000 each on ninety-day notes with interest at the rate of seven per cent per annum. Two of the notes were repaid with interest. The other two, however, were never repaid, although the interest was paid until 1925. In 1924, when the company was in default upon the two former notes, the trustees loaned it an additional $5000, which was not repaid. The court surcharged defendant estate with the $15,000 lost on the three loans, together with five per cent interest thereon. While there is some indication that Lansden was secretary of the Denison-Gholson Company during this period, the evidence is insufficient to show he was a stockholder or had ever received any direct or indirect benefit from the corporation. The propriety of the trans-

actions is, therefore, governed by the question whether such loans in themselves were proper investments under the authority conferred upon the trustees. In *Merchants Loan and Trust Co.* v. *Northern Trust Co.* 250 Ill. 86, we pointed out that "Where the will gives authority to the trustees to convert realty into personalty or personalty into realty, or invest and re-invest, in their discretion, the trustees may purchase such securities as a prudent and provident person would purchase as good and safe investments, and they are not restricted to the conditions and limitations imposed by law for the investment of trust funds." The evidence in the case at bar shows that the Denison-Gholson Dry Goods Company, a corporation located in Cairo, Illinois, conducted a large business throughout several states. It had substantial lines of credit at several banks and a Dun & Bradstreet rating from $150,000 to $200,000. It was regarded as one of the leading business concerns of Cairo, and bank officers considered loans to it as good investments. While it encountered financial difficulties in later years, and failed in 1929 or 1930, there is no evidence that such developments could or should reasonably have been foreseen in 1922. We think the loans made to this company on short term notes in that year were not so imprudent as to render the trustees personally liable for the subsequent loss thereon. That part of the decree surcharging defendant estate for the loss on the first two $5000 notes should, therefore, have been reversed. However, the third loan of $5000, found to have been improper, was made in 1924, when the debtor was already in default upon the other two notes. The trustees were thus put upon notice that the Denison-Gholson Company was probably in financial difficulties at that time, and that any further investment in its notes would be hazardous. The court was clearly warranted in surcharging the defendant estate with the amount of this loss, and the Appellate Court was correct in affirming such portion of the decree.

There is no merit, however, in plaintiff's position that compound interest should have been charged on all improper disbursements. There is no such gross abuse of authority shown by this record as would justify that action. The trustees were not shown to have been guilty of self-dealing, nor is there any evidence that they failed to act in good faith and with proper motives. It is apparent that Oscar Tamm had confidence in the ability and integrity of David Lansden. His will conferred broad discretionary powers on the trustees, and they were charged with difficult problems in the performance of their duties. The record discloses that on the whole they discharged their obligations in a diligent and orderly manner, and with profit to the trust. The account books of the trust show some 5000 entries, made over a period of more than thirty years, and contain a remarkably complete record of the transactions engaged in by the trustees. It has long been the rule that interest will not be compounded against a trustee except in cases of gross delinquency. (*Mathewson* v. *Davis,* 191 Ill. 391, 399.) The circumstances and conduct of the trustees shown by this record do not constitute such a case.

We have considered numerous other contentions argued in the briefs, and find them to be without substantial merit. As the principal issues have been disposed of, any further discussion of the other questions raised would unduly extend this opinion.

That portion of the judgment of the Appellate Court which is consistent herewith is affirmed, and the balance thereof is reversed. The entire case, however, will be remanded to the circuit court of Alexander County, with directions to render a decree in conformity with the views expressed herein.

*Affirmed in part and reversed in part*
*and remanded, with directions.*