Arthur Dunas, Plaintiff-Appellee, v. Metropolitan Trust Company, etc., et al., Defendants-Appellees, and Morris J. Silver and Amelia A. Silver, Defendants-Appellants.

Gen. No. 48,828.

First District, First Division.

April 29, 1963.

Stephen M. Herman and Ralph D. Silver, of Chicago, for Morris J. Silver and Amelia A. Silver, appellants.

167

Main & Main, and Sydney E. Foster, Philip A. Winston, and Ned Langer, all of Chicago, for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a proceeding to liquidate and distribute the assets of a trust established in 1932 for the benefit of the creditors of Jacob Lanski. In 1962, the court ordered the sale of the trust res and distribution of the proceeds. Defendant creditors, Morris J. Silver and Amelia A. Silver, appeal from the order of distribution because it denies them a priority given to them by the trust agreement.

The record consists of the pleadings, the creditors' agreement, and a declaration of trust. The sole question is whether the court was correct in disregarding the plan of distribution established by the trust agreement, which placed the Silvers in a preferred position in the order of distribution of the proceeds of the sale of the trust res.

Jacob Lanski died during the pendency of involuntary bankruptcy proceedings. On July 1, 1932, subsequent to his death, a settlement agreement was entered into by his heirs and his creditors, and the assets of his estate were conveyed to the Metropolitan Trust Company, as trustee, for the benefit of his wife, Fannye Lanski, his heirs, and his creditors. It was intended that the liquidation of his assets and the plan of distribution would be completed within two years thereafter. Apparently nothing was done to force the liquidation of the trust res until 1962.

The Silvers had a claim against Lanski for $3,890. Pursuant to the terms of the agreement the trustee executed and delivered to Silver (1) its promissory note for $2,250, due two years after date, bearing 6% interest prior to maturity and 7% interest after ma-

turity, secured by a first mortgage on parcels 2 and 3 of the trust estate, and a second mortgage on parcel 1; and (2) a certificate of deposit as a general creditor for $1,640. The record indicates that the reason for securing the $2,250 note was that the Silvers released mortgages on the trust res, which had been given them by Lanski prior to the bankruptcy proceedings, the validity of which mortgages was questioned by the creditors.

Paragraph 15 of the agreement provides for the disbursement of the proceeds of the sale of any part of the trust property. The plan of distribution is (a) to pay the trustee its fees and costs; (b) to pay to Fannye Lanski, widow of Jacob, disbursements made by her in connection with procuring a title guarantee policy; (c) to pay the principal and accrued interest on the first mortgage on the parcel of real estate so sold; (d) to pay the principal and accrued interest on the second mortgage, if any, on the parcel of real estate so sold; (e) out of the "balance" of the proceeds, ⅓ is to be paid to Fannye Lanski and the remaining ⅔ of the "balance," after the payment of specified sums, is directed "to be distributed among the creditors who shall hold certificates of deposit . . . ."

The proceeds of the sale of the trust res are not sufficient to pay in full all of the unpaid claims. The court ordered payment to the Silvers of $3,890 (the total of the $2,250 note and the $1,640 general claim) on a parity with the other general creditors, out of the "balance," under the provisions of subparagraph (e) instead of as provided for in subparagraph (c).

The Silvers contend that the plan of distribution provided for in paragraph 15 of the agreement was not followed by the court's order; that the note for $2,250 and interest to date was not given priority of payment ahead of the general creditors; and that this

169

will result in their being paid $187.77 instead of $2,250 plus interest from December 30, 1932. There remains for distribution to creditors the sum of $6,355.65, which will be exhausted if the priority claim of the Silvers for the $2,250 note and interest is correct.

In support of the trial order, it is contended that the Silver cause of action on the $2,250 note arose on its maturity, December 30, 1934. Thus, on December 30, 1944, "ten years after the maturity date of the principal promissory note, no action having been taken by Silver, his right to foreclose the mortgage was barred by the Statute of Limitations. The running of the Statute of Limitations also extinguished and terminated any claim for priority Silver may have had as the holder and owner of the alleged promissory note and the mortgage securing the same. There are no facts or circumstances alleged or asserted by Silver to toll the Statute of Limitations in this cause."

 The Silvers do not dispute the fact that, if applicable here, the Statute of Limitations would bar the enforcement of both their $2,250 note and the mortgage securing it, since "where the debt is paid or barred by the Statute of Limitations, a mortgage being but incident to the debt, is no longer a lien on the property." (Markus v. Chicago Title & Trust Co., 373 Ill 557, 560, 27 NE2d 463 (1940).) The running of a statute of limitations bars the remedy for enforcing a debt, but does not extinguish the debt itself. 25 ILP, Limitations, ch 5, § 161.

The Silvers contend, however, that the statute has no application to their rights under the trust agreement; they rely on the rule that as between trustee and cestui que trust, "mere delay will not defeat a recovery, unless the trustee has repudiated or disavowed the trust, and the disavowal is known to the

cestui que trust." (Reynolds v. Sumner, 126 Ill 58, 70, 18 NE 334 (1888); Chicago & E. I. R. Co. v. Hay, 119 Ill 493, 502, 10 NE 29 (1887); Holyoke v. Continental Illinois Nat. Bank & Trust Co., 346 Ill App 284, 297, 104 NE2d 838 (1952).) If the security interest were given the Silvers as beneficiaries, then the instant case would come within this rule, and as an action between trustee and beneficiary, lapse of time would be no bar to the enforcement of the priority set forth in paragraph 15(c) of the agreement.

■ Therefore, the only question before us is whether the trust agreement shows an intent to give the Silvers, as beneficiaries, priority of payment over the other creditor-beneficiaries without being affected by the Limitations Act. The terms of the agreement must be considered in the light of the rule stated in Olson v. Rossetter, 399 Ill 232, 238, 77 NE2d 652 (1948):

> "The rules of construction which apply to the interpretation of contracts apply to the construction of trust instruments. (Volume 54, American Jurisprudence, Trusts, section 17.) The object of judicial construction of a written instrument is to ascertain the true intent of the parties and to carry it out, if it does not conflict with any rule of law or good morals or the declared public policy of the State. (Parker-Washington Co. v. City of Chicago, 267 Ill 136.) It is not the function of a court to modify a contract or create terms new or different from those to which the parties have agreed."

■ The creditors' agreement, incorporated by reference in the trust agreement, explicitly provided that the trustee was to execute and deliver to Silver its note for $2,250, secured by mortgages; and that Silver, in consideration of the agreement, was to ex-

171

ecute and deliver to the trustee releases of the mortgages he then held on the Lanski property, plus a warranty deed conveying real estate theretofore conveyed to him by Lanski. Given these provisions, the failure of paragraph 15(c) to specify Silver by name as one of the mortgagees to whom preference was to be given upon distribution cannot be construed to mean that Silver may take, under 15(c), only as mortgagee and not as beneficiary. On the contrary, we believe that the agreement reflects an intent, in addition to mortgage security, to give the Silvers, as beneficiaries, priority of payment of the $2,250 note over the other creditor-beneficiaries.

As we find nothing in this record to show that the Silvers forfeited this priority, we conclude there was no justification for denying to the Silvers priority of payment of their $2,250 claim, with interest.

For the reasons stated, the orders entered by the trial court denying priority to the claim of the Silvers and directing distribution of the proceeds of sale of the trust res are reversed and the cause is remanded to the trial court with directions to order distribution in accordance with the views expressed herein.

Reversed and remanded with directions.

BURMAN, P. J. and ENGLISH, J., concur.