**Doris Fuller CHILDS, Eleanor Fuller Parson, Natalie Stocking, Priscilla Parson and Katherine Marrs, beneficiaries of the Judson M. Fuller Trust, Plaintiffs,**

v.

**NATIONAL BANK OF AUSTIN, an Illinois Corporation and Trustee of the Judson M. Fuller Trust; Carey, Filter & White, a partnership; Robert F. Carey, an individual partner; Thomas F. Carey, an individual partner; Edward M. White, an individual partner; Edmund P. Boland, an individual partner; Anthony Carey, an individual partner; and Patrick S. Filter, an individual partner and Chairman of the Board of the National Bank of Austin and the Harrington and King Perforating Company, Inc., Defendants.**

Civ. A. No. 78 C 3990.

United States District Court,
N. D. Illinois, E. D.

Oct. 27, 1980.

Raymond I. Geraldson and John H. Anderson, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for plaintiffs.

Donald J. Kerwin, Chicago, Ill., for defendant National Bank of Austin.

Richard K. Wray, Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., for defendants.

## MEMORANDUM OF DECISION

JULIUS J. HOFFMAN, Senior District Judge.

This is an action brought pursuant to the diversity jurisdiction of the court in which the plaintiffs, certain beneficiaries of the Judson M. Fuller Trust, seek to recover damages and obtain injunctive relief from the defendants, Patrick S. Filter, the law firm of Carey, Filter and White and the National Bank of Austin. The case proceeded to trial before the court sitting without a jury.

The plaintiffs' first amended complaint is in three counts and seeks the removal of the present trustee of the Judson M. Fuller Trust, the National Bank of Austin, and the removal of Patrick S. Filter as Chairman of the Board of the Harrington and King Perforating Company. The amended complaint further seeks the recovery of all fees paid to the Bank as trustee, the recovery of all fees and wages paid to the defendant Filter since 1972 in his capacity as Chairman of the Board and the recovery of all retainer fees paid the defendant law firm since 1972 while the law firm has been on retainer to the corporation as its counsel.

Count I of the amended complaint alleges that the principal of the Judson M. Fuller Trust consists of the controlling portion, 704 shares, of the stock of the Harrington and King Perforating Company. It is asserted that the National Bank of Austin is the present trustee and that it caused one of its directors, Patrick Filter, to be elected Chairman of the Board of the Harrington and King Corporation in 1972. The plaintiffs further allege that the defendant Filter is also the present Chairman of the Board of the trustee Bank and that he has held both positions simultaneously since 1972.

The plaintiffs contend that the election of Filter to the Board of the company was the result of the defendant Bank, which has the sole voting authority over the stock held in trust, voting its shares by proxies issued to Filter and Gordon Steil, president of the corporation, for the election of Filter as Chairman. It is alleged that the Bank and Filter have exercised dominion and control over the stock held by the trust for the purpose of enriching the defendant Filter and the law firm of which he is a partner. The plaintiffs assert that the election of Filter as Chairman through the acts of the Bank as trustee has created a conflict of interest whereby the Bank's duties to the beneficiaries of the trust conflict with those duties owed by Filter to the corporation. The plaintiffs aver that the creation of this conflict constitutes a breach of fiduciary duty by the Bank to the beneficiaries of the Judson M. Fuller Trust.

Count II of the amended complaint alleges that the defendant Filter has assumed control and operation of the Harrington and King Perforating Company for his own personal profit and gain thereby placing himself in a position of conflict of interest. It is asserted that the payment of fees and wages to Filter causes him to personally profit from his fiduciary position and that the trust has suffered a loss.

Count III asserts that the law firm of Carey, Filter and White is on retainer to the Harrington and King Perforating Company. The defendant Filter is alleged to be a partner in the law firm. The plaintiffs aver that the retainer fees have increased yearly since 1972 at the personal request of the defendant Filter in his capacity as Chairman of the Board of the company. The payment of these retainer fees is asserted to be in violation of the defendant Filter's duties to the beneficiaries of the trust.

In summary, the plaintiffs assert that the trustee Bank and Filter are jointly and severally liable for damages resulting from their breach of fiduciary duties and the existing conflict of interest. The plaintiffs assert that the defendant Filter and the law firm are jointly and severally liable for all sums received by the law firm since 1972. Damages are claimed in the amount of $53,-621.00 for the retainer fees paid to the law firm; $5,300.00 in director's fees paid to Filter; $77,532.63 in salary paid to Filter in his capacity as Chairman of the Board and

trustees fees paid to the Bank in the amount of $4,150.00. The plaintiffs further seek the removal of the Bank as trustee and the removal of Patrick Filter as Chairman of the Board of the Harrington and King Perforating Company.

All defendants deny the substantive allegations of the amended complaint and deny that either a breach of fiduciary duty occurred or that a conflict of interest exists as a result of the actions of the defendants. The defendants Filter and the law firm affirmatively assert that the plaintiffs are barred by the applicable statute of limitations and are further barred from proceeding with this action because they are guilty of laches.

Much of the testimony admitted in this trial was presented pursuant to the stipulation of the parties. The only seriously contested factual issues were the plaintiffs' prior knowledge of the defendant Filter's triple position with the corporation, the exact manner in which Filter obtained the position of Chairman of the Board and certain events involving an alleged attempt by the defendant Filter to sell the corporation to a third party without notice to the beneficiaries of the Judson M. Fuller Trust. As such issues are important but not controlling in this case, the court concludes that the parties have presented the court with a situation in which there is little disagreement as to what the facts are but there is a major dispute as to how the law is to be applied to these facts. The court has endeavored to comply with the wishes of the parties and will now set forth its findings of fact and conclusions of law.

The plaintiffs are current beneficiaries of the Judson M. Fuller Trust. The trust was established by the will of Judson M. Fuller and was dated March 6, 1953. Judson M. Fuller died on February 5, 1963. The terms of the trust instrument provide that the trust be funded with 704 shares of the stock of the Harrington and King Perforating Company. The net income of the trust is to be divided among Judson M. Fuller's four children. In the event of the death of one or more of the children, that child's share is to be distributed to his surviving heirs or by the terms of the child's will.

The 704 shares of stock constitute 67.7% of the total outstanding shares of the Harrington and King Perforating Company. Accordingly, the trust property represents the controlling interest in the company. By Paragraph 4 of the trust instrument, Judson E. Fuller, the son of Judson M. Fuller, is named as co–trustee with the defendant National Bank of Austin. Paragraph 4(a) of the trust instrument empowers Judson E. Fuller, for as long as he should desire, with the sole voting authority over the stock in the trust to be voted in a manner which, in his discretion, is in the best interests of the beneficiaries. Paragraph 4(d) of the trust instrument gives the surviving co–trustee the right to vote the stock in the same manner as given to Judson E. Fuller by Paragraph 4(a).

At the time the trust became effective and continuing until the death of Judson E. Fuller in March, 1972, Judson E. Fuller was president of the Harrington and King Perforating Company and its chief executive officer. Judson E. Fuller was also trustee of the trust with the National Bank of Austin and also a beneficiary of the trust. He also served on the Board of Directors of the National Bank of Austin and was a member of the Bank's trust committee for five years prior to the death of Judson M. Fuller.

Three days following the death of the Chairman of the Board of the Harrington and King Perforating Company, Judson E. Fuller, on March 22, 1972, a special meeting of the Board was convened for the purpose of selecting a new Chairman of the Board. At that meeting, Patrick Filter, who had served as a Board member since 1964, discussed the succession with another Board member, Robert Jorgenson. It was agreed between the two that Ray Zelder should not be Chairman of the Board because of his lack of experience. Patrick Filter requested that Robert Jorgenson nominate him, Filter, to be the new Chairman of the Board. Jorgenson did nominate Filter and his election as Chairman of the Board was

unanimous with Filter abstaining. At each subsequent yearly meeting of the Board of Directors, Filter was unanimously reelected as Chairman.

Prior to his election as Chairman of the Board of the Harrington and King Perforating Company and continuing to the present, Patrick Filter has been the Chairman of the Board of the National Bank of Austin. His initial election as Chairman of the Board of the trustee Bank was in 1968. Filter is also a partner in the law firm of Carey, Filter and White. The law firm has been on retainer to the Harrington and King Company since prior to 1963 and has served as counsel to the Company since 1950.

From 1972 through 1979, Patrick Filter has received $92,179.50 in salary as Chairman of the Board. He has also received $6,150.00 in director's fees during that time. Such fees were initiated by Judson E. Fuller in 1969. Since 1972, the law firm of Carey, Filter and White has received retainer fees from the corporation in the amount of $54,250.00 and special fees in the amount of $10,500.00. Patrick Filter, as a partner in the law firm, receives 19% of the profits of the law firm. Trustees fees in the amount of $6,250.00 have been paid to the National Bank of Austin since 1972.

Patrick Filter has abstained from voting on any matters relating to the payment of a salary to him, the payment of director's fees and the increases in the retainer fees to the law firm which have been made periodically since 1972. As a member of the trust committee of the National Bank of Austin, Filter has refused to vote on any matter related to the Judson M. Fuller Trust.

On April 18, 1972, Patrick Filter sent a letter to the beneficiaries of the trust, including each of the plaintiffs in this action, in which he informed them of his election as Chairman of the Board. On July 26, 1972, Patrick Filter sent another letter to the beneficiaries in which he suggested that the family choose one of their members to serve as a director of the corporation to fill the vacancy created by the death of Judson E. Fuller. The family selected Charles Stock-

ing to serve as their representative on the Board and he was elected to the Board on March 6, 1973.

Since 1972, the Harrington and King Perforating Company has operated successfully and profitably under the direction of Patrick Filter as Chairman of the Board and Gordon Steil as President of the corporation. The net sales of the company have increased from $5,921,053.00 in 1972 to $15,759,664.00 in 1979. During the same period, the dividends paid by the corporation to its shareholders, including the plaintiffs, have increased from $97,334.00 to $228,800.00. The net sales of the corporation are now three times the amount that existed in the best year prior to Patrick Filter becoming Chairman of the Board.

In 1977, Gordon Steil became aware of certain communications between Patrick Filter and a representative of the IMF Corporation. The IMF Corporation had expressed an interest in purchasing the Harrington and King Perforating Company. Steil was informed by Filter that such communications were a common occurrence and offers to purchase were often received by small corporations such as Harrington and King. No negotiations for the sale of Harrington and King were ever instigated by Filter regarding IMF or any other company. The entire matter was resolved at a subsequent meeting of the Board when it was unanimously agreed that the company was not for sale. Gordon Steil so informed the IMF Corporation.

Despite the termination of the matter by the Board, Ray Zelder, another Board member, advised one of the plaintiffs of his belief that Filter was attempting to sell the company. This communication occurred almost two months after the Board meeting. Ray Zelder expressed his concern to one of the plaintiffs and recommended that an attorney be retained to prevent further action by Filter to attempt to sell the company without the approval of the beneficiaries. Such action was taken and the present lawsuit resulted.

The plaintiffs in this action had several communications with Patrick Filter periodi-

cally since 1972. Several of the plaintiffs were given a tour of the Harrington and King Company by Patrick Filter in 1972. The plaintiffs were aware that Patrick Filter was the Chairman of the Board and were also aware that he had been Judson E. Fuller's personal attorney. It was not until the 1978 IMF matter arose that the plaintiffs became aware of Filter's triple role relative to the trust, the corporation and his position as a partner in the law firm of Carey, Filter and White.

Based upon these facts, the court will first discuss the merits of the defendants' affirmative defenses. The defendants Filter and the law firm assert that the plaintiffs are barred from proceeding with this action on the equitable grounds of laches and because of the applicable limitations period. The court finds that the defendants have failed to satisfy their burden of establishing either of these affirmative defenses.

■ The plaintiffs cannot be found guilty of laches. The doctrine of laches is founded upon the maxim that equity aids the vigilant and not those who "knowingly slept upon their rights". *Pyle v. Ferrell*, 12 Ill.2d 547, 552, 147 N.E.2d 341, 344 (1958). It is not the passage of time that will constitute laches but rather it must be clear that the plaintiffs were aware of their rights for such a period as to now make it inequitable and prejudicial to charge the defendants with any liability. *Harper v. City Mutual Insurance Company*, 67 Ill. App.3d 694, 24 Ill.Dec. 308, 385 N.E.2d 75 (1978); *DeMarco v. University of Health Sciences*, 40 Ill.App.3d 474, 352 N.E.2d 356 (1976).

■ If the plaintiffs had been aware of the role of Patrick S. Filter as Chairman of the Board of the company and of the trustee Bank, it is possible that the plaintiffs could be barred by laches from proceeding with this claim. Had the plaintiffs been aware of the facts in 1972, the defendants would be seriously prejudiced by the conduct of the plaintiffs in allowing the situation to go unchecked for six years. *See, Whitaker v. City of Carbondale*, 55 F.Supp. 72 (E.D.Ill.1944). However, the court has found that the plaintiffs only became aware of the factual situation in 1978 and took prompt action by filing this lawsuit less than seven months thereafter. The defense of laches is unavailable to the defendants.

■ The determination that the factual situation became known to the plaintiffs in 1978 also defeats the defendants' claim that the plaintiffs are barred by a five–year statute of limitations. Furthermore, in Illinois the passage of time cannot bar a claim arising from an express active trust. *Dunas v. Metropolitan Trust Company*, 41 Ill. App.2d 167, 190 N.E.2d 144 (1963). It is only when a trustee repudiates the trust or disavows it that any limitation period begins. *Holyoke v. Continental National Bank*, 346 Ill.App. 284, 104 N.E.2d 838 (1952). No such repudiation has occurred and the court finds that this action has been timely brought. The plaintiffs are neither barred nor equitably estopped from proceeding with this action.

■ In determining whether or not the plaintiffs have established their right to recovery in this case, the court is guided by several well–established principles of equity applicable to the law of trusts. Equity imposes upon a fiduciary and trustee a liability that goes beyond the mere equitable rights of the beneficiaries and such a fiduciary may not obtain any profit or advantage from his dealings with the trust property. *Winger v. Chicago City Bank and Trust Company*, 325 Ill.App. 459, 60 N.E.2d 560, *reversed on other grounds*, 394 Ill. 94, 67 N.E.2d 265 (1945). Equity will divest the fiduciary of any profit so obtained. *United States ex rel. Willoughby v. Howard*, 96 F.2d 893 (7th Cir. 1938). It does not matter that the trust did not suffer a loss or that the beneficiaries were injured in any way. *In re Gleeson's Will*, 5 Ill.App.2d 61, 124 N.E.2d 624 (1955); *Winger v. Chicago City Bank, supra.*

■ Just as a fiduciary may not profit from self–dealing with the trust property, a fiduciary may not place himself in a position wherein his personal interests conflict with those of the trust's beneficiaries.

*Campell v. Albers,* 313 Ill.App. 152, 39 N.E.2d 672 (1942). Conflicts of interest are generally prohibited. *Humpa v. Hedstrom,* 341 Ill.App. 605, 94 N.E.2d 614 (1950); *Olson v. Rossetter,* 330 Ill.App. 304, 71 N.E.2d 556 (1947). A conflict of interest arises when the trustee is placed in a position where it would be difficult for him to be faithful and honest with the trust beneficiaries. *Humpa v. Hedstrom, supra; Campbell v. Albers, supra.*

■ The situation presented by the circumstances of this case convinces the court that a conflict of interest does exist as to the role of Patrick S. Filter as a Chairman of the Board of the National Bank of Austin as well as the Harrington and King Perforating Company. The court doubts that the defendants can deny that a conflict of interest exists in this case. One need only examine the by–laws of the corporation. In the event that the stock of the corporation is to be sold, Article IV, Section 2 provides that the stock must first be offered to the corporation. In that regard, Patrick Filter, as Chairman of the Board of the corporation, would attempt to secure the lowest possible selling price for the benefit of the corporation. In his capacity as a Board member of the trustee Bank, however, Filter would be obligated to obtain the highest possible selling price for the benefit of the trust's beneficiaries. Such a conflict of interest is neither remote nor speculative and the fact that Filter is only the agent of the trustee Bank is not material. *People ex rel. Barrett v. Central Republic Trust Company,* 300 Ill.App. 297, 20 N.E.2d 999 (1939).

■ However, as the defendants correctly assert, the mere existence of a conflict of interest does not *ipso facto* require the removal of the trustee or result in any liability. When the conflict of interest is contemplated, created and sanctioned by the trust instrument, the conflict of interest is allowed to exist. *Tankersley v. Albright,* 374 F.Supp. 538 (N.D.Ill.1974); *Conant v. Lansden,* 341 Ill.App 488, 94 N.E.2d 594, *reversed in part on unrelated grounds,* 409 Ill. 149, 98 N.E.2d 773 (1951). This recognized exception to the general rule is founded upon the common situation where a testator, who owns what he considers to be a thriving business, appoints as trustee an individual who is familiar with the business and who is to continue to take an active role in the daily operation of the business. The reasons for such action by the settlor are "too patent to require comment". *Conant v. Lansden, supra* at 502, 94 N.E.2d 594. Accordingly, the court must determine whether the trust instrument at issue in this case falls within the exception to the general rule.

■ In determining whether the exception applies here, the court must examine the intent of the settlor when the trust was created. In so doing, the court is obligated to examine extrinsic evidence of the circumstances as they existed at the time the trust was created. *Northern Trust Company v. Winston,* 32 Ill.App.3d 199, 336 N.E.2d 543 (1975); *Plast v. Metropolitan Trust Company,* 401 Ill. 302, 82 N.E.2d 155 (1948); *Harris Trust and Savings Bank v. Wanner,* 393 Ill. 593, 66 N.E.2d 867 (1946). Upon such a review, the court concludes that the circumstances surrounding the trust at issue herein requires a finding that the exception does apply.

The trust instrument provides that the co–trustees are to be Judson E. Fuller and the National Bank of Austin. The evidence establishes that Judson E. Fuller was empowered with the sole voting authority over the stock in the trust and did so vote the stock during his lifetime. At the time the trust was created, at the death of Judson M. Fuller in 1963, Judson E. Fuller was the president and chief executive officer of the Harrington and King Perforating Company. Judson E. Fuller was also a beneficiary under the terms of the trust as well as one of the trustees. Judson M. Fuller, who operated the corporation for many years prior to his retirement, was well aware of these circumstances when he created the trust in his will. Judson M. Fuller also had extensive dealings with the National Bank of Austin for several years prior to his death.

The trust instrument did not provide for a successor trustee to Judson E. Fuller. However, Paragraph 4(e) of the will of Judson M. Fuller provides that the surviving trustee be empowered with the same authority to vote the stock as was given to Judson E. Fuller. Even in the absence of such explicit provisions, it has been held that the power and authority of a deceased trustee devolves to the surviving trustee. *LaForge v. Binns*, 125 Ill.App. 527 (1909).

The court must conclude that it was the intent of Judson M. Fuller that the trustee take an active role in the management of the corporation. No other intent can be derived from the circumstances of naming the current president and chief executive officer of the Harrington and King corporation to serve as the trustee of the trust which was funded with the controlling interest of the corporation's stock. The corporation had been operated as a family concern for many years. To appoint an individual as trustee who was familiar with the operation of the business was reasonable. Accordingly, the court concludes that the present trust instrument contemplates and sanctions the existence of a conflict of interest. The trustee Bank, and by analogy, its agent, Patrick Filter, is permitted to take an active part in the operation of the Harrington and King Perforating Company. There can be no breach of fiduciary duty where the conflict of interest is permissible. *Tankersley v. Albright, supra; Stone v. Baldwin*, 348 Ill.App. 225, 109 N.E.2d 244 (1952); *Conant v. Lansden, supra*.

The court's finding that Patrick Filter may properly serve as Chairman of the Board of the Harrington and King corporation does not automatically absolve him of the liability to repay to the beneficiaries that which he has received as Chairman of the Board. The plaintiffs rely upon the decision of *Stone v. Baldwin, supra*, for the proposition that Filter is liable to the trust beneficiaries for any amounts he received as wages or as director's fees from the corporation. That case holds that a testamentary trustee, with actual or implied authority to manage or participate in the management of the corporation, may vote himself or be voted an officer of the corporation. That holding is consistent with the decisions of *Tankersley* and *Conant*. However, that case further holds that:

> If such a position is obtained through his own act as trustee and he receives compensation therefor, he must account for same to the trust. His fiduciary duties come first for which he may rightfully be paid, but he cannot profit otherwise.

*Stone v. Baldwin, supra* at 243, 109 N.E.2d 244.

The plaintiffs urge that, even if the court finds that Patrick Filter may serve as Chairman of the Board, he must still refund all amounts received from the corporation. Such a decision would seem consistent with the holding in *Stone v. Baldwin*. However, to so hold would result in a situation where Filter, or any agent of the trustee Bank, could be elected to serve as Chairman of the Board and yet would be compelled to serve in that capacity without compensation.

In order to avoid such an inequity, the court must interpret the holding in *Stone v. Baldwin* differently from that urged by the plaintiffs. The distinction the court finds between *Stone* and the present situation is that Patrick S. Filter is not the trustee of the Judson M. Fuller trust. The individual surcharged in *Stone* was the individual trustee and the president of the corporation involved. The court specifically found that the individual surcharged was performing no more or different acts as president of the corporation than he would have had he only been the trustee. Double compensation for performing the same acts in two different capacities was found to be improper. *Stone v. Baldwin, supra* at 244, 109 N.E.2d 244.

In this case, however, the undisputed facts show that the trustee Bank received fees as compensation for the performance of its duties as trustee for the benefit of the beneficiaries. Such acts include the administrative duty of dispersing dividend payments to the trust beneficiaries. Filter, on the other hand, was compensated for the performance of his duties as

Chairman of the Board of the Harrington and King Perforating Company for the benefit of the corporation's shareholders and not for the benefit of the beneficiaries of the trust. Despite the fact that Patrick Filter is an agent of the trustee Bank, the Bank's duties as trustee and Filter's duties as Chairman of the Board are not interchangeable as was the case in *Stone v. Baldwin.*

The acts performed by Filter were done in a capacity separate and apart from those of the Bank as trustee and are in no manner commensurate with the Bank's duties to the trust beneficiaries. Filter has a right to be compensated for his acts as Chairman of the Board just as the trustee has the right to be compensated for whatever actions it takes relative to the trust. Filter has incurred no liability to the plaintiffs in this action. The fees and wages paid to him were reasonable in amount and he is entitled to retain them.

■ Having held that Filter may continue to serve as Chairman of the Board and may retain his compensation, the court must find that the Bank is not severally liable for repayment of Filter's compensation and cannot be found to be liable for the trustee's fees it has received since 1972. The Bank's actions in aiding the election of Filter as Chairman of the Board were done in the exercise of the discretionary powers granted to it under the terms of the trust instrument. Discretionary decisions by trustees are not to be overturned in the absence of extenuating circumstances such as bad faith, fraud or an abuse of discretion. *In re Moir Hotel Company,* 186 F.2d 377 (7th Cir. 1950); *Tankersley v. Albright, supra; Continental National Bank v. Sever,* 393 Ill. 81, 65 N.E.2d 385 (1946).

■ There is no evidence that the Bank's actions were taken as the result of bad faith or fraud. Neither can the court find any evidence that the actions of the Bank were an abuse of the discretion given it under the terms of the trust instrument. The problem facing the Bank was indeed difficult. Had the Bank voted for the election of an outsider to serve as Chairman of the Board, the same plaintiffs in this action could have brought suit against it claiming a violation of the terms of the trust instrument by failing to elect one of its own Board members to serve as Chairman. Having chosen the opposite path, the Bank has been forced to justify its decision in the present lawsuit. It cannot be said that the Bank abused its discretion by appointing a man who was not only qualified for the position of Chairman of the Board but one whose leadership has apparently improved the operation of the corporation to the benefit of the shareholders and the trust beneficiaries. The Bank may retain the fees paid to it and may continue to serve as trustee of the Judson M. Fuller trust. *See, Altschuler v. Chicago City Bank and Trust Company,* 380 Ill. 137, 43 N.E.2d 673 (1942); *McNair v. Montague,* 260 Ill. 465, 103 N.E. 450 (1913).

The only remaining issue to be decided in this action is whether the plaintiffs may recover the legal fees paid to the law firm of Carey, Filter and White. The evidence establishes that the law firm was under retainer to the corporation long before Patrick Filter became Chairman of the Board. In fact, a former partner in the law firm, Howard Brintlinger, had served on the Board of the Harrington and King corporation from 1954 until his death in 1958. The plaintiffs presented no evidence to show that Patrick Filter improperly enhanced the profits of the law firm or even voted for the increases in the retainer fees periodically granted by the Board of Directors of the Harrington and King corporation since 1972.

■ No member of the law firm engaged in any legal work for the corporation outside of that which was necessary. The fees paid to the law firm either under retainer or for special services rendered are admitted by the plaintiffs to be reasonable. The fact that Filter is a partner in the law firm cannot result in any liability in the absence of proof that the fees paid were unreasonable or that Filter abused his position as Chairman of the Board to improperly increase the legal fees for his or any

other partner's benefit. *Sueske v. Schofield*, 376 Ill. 431, 34 N.E.2d 399 (1941). The plaintiffs are not entitled to recover any sums from any partner of the law firm of Carey, Filter and White since 1972.

The court concludes that, although the plaintiffs have established that there exists a conflict of interest as the result of Patrick Filter serving as Chairman of the Board of both the corporation and the trustee Bank and as a result of his position as a partner in the law firm of Carey, Filter and White, no defendant has breached any duty owed to the beneficiaries of the Judson M. Fuller trust. The will of Judson M. Fuller contemplated, sanctioned and even created the existing conflict of interest. None of the defendants have acted outside the scope of their duties as trustees, corporate officers or attorneys in this case. The plaintiffs are entitled to no recovery or injunctive relief as the defendants have incurred no liability. Judgment will be entered in favor of the defendants and against the plaintiffs on all counts of the amended complaint.